SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
JAY T. RAMSEY, Cal Bar No. 273160
KEVIN MURPHY, Cal Bar No. 346041
RANA SALEM, Cal Bar No. 358050
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701
Email: ccardon@sheppard.com
jramsey@sheppard.com
kemurphy@sheppard.com
rsalem@sheppard.com

*Attorneys for Defendant*
Lulu & Georgia, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CORREIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LULU & GEORGIA, INC.,<br><br>Defendant. | Case No. 3:26-CV-01186-GPC-JLB<br><br>*Hon. Gonzalo P. Curiel*<br><br>**DEFENDANT LULU & GEORGIA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: July 24, 2026<br>Time: 1:30 p.m.<br>Courtroom: 12A/12th Floor<br><br>Complaint Filed: February 24, 2026<br>Trial Date: Not Set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 24, 2026, at 1:30 p.m., or as soon thereafter as the Motion may be heard in Courtroom 12A of the above entitled Court located at 333 West Broadway, San Diego, California, 92101, the Honorable Gonzalo P. Curiel presiding, Defendant Lulu & Georgia, Inc. will, and hereby does, move the Court for an order dismissing this action in its entirety with prejudice and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Defendant moves to dismiss the Class Action Complaint filed by Plaintiff Elizabeth Correia, under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks Article III standing to pursue her claim under California Invasion of Privacy Act ("CIPA") section 631(a) and fails to state a claim upon which relief can be granted.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers in the Court's file, the record and files herein, and upon such oral argument as may be made at the hearing on the Motion and such other evidence as may be admitted at the time of the hearing on the Motion.

Dated: May 11, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *s/ P. Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
KEVIN MURPHY
RANA SALEM

*Attorneys for Defendant*
Lulu & Georgia, Inc.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ALLEGATIONS IN THE COMPLAINT ........ 2

III. THE COURT SHOULD DISMISS THE COMPLAINT ........ 3

A. Legal Standard ........ 3

B. Plaintiff Lack Standing To Pursue Her Claim Under California Penal Code Section 631(a) ........ 4

C. Even if Plaintiff Has Standing to Pursue Her Claim, Plaintiff Nonetheless Fails To State A Claim For Violation Of California Penal Code Section 631(a) ........ 7

1. Plaintiff fails to allege that the third-party companies violated section 631(a)'s first clause ........ 7

2. Plaintiff fails to allege that the third-party companies violated section 631(a)'s second clause ........ 8

3. Plaintiff fails to allege that the third-party companies violated section 631(a)'s third clause ........ 11

4. Even if the third-party companies violated section 631(a), Plaintiff fails to allege that Lulu & Georgia aided and abetted the third-party companies' violation ........ 11

D. Plaintiff Fails To State A Claim For Violation Of California Penal Code Section 632(a) ........ 13

1. Plaintiff fails to plausibly allege that her communications with the Website were confidential, as required by section 632 ........ 14

2. The section 632(a) claim fails for additional reasons ........ 16

IV. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

Page(s)

Cases


*Ahmed v. Cnty. of Santa Clara*
2021 WL 105620 (N.D. Cal. Jan. 12, 2021) .......... 3

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 3, 18

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1988) .......... 3

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .......... 3

*Borrello v. Respironics Cal., LLC*
2024 WL 1496215 (S.D. Cal. Apr. 5, 2024) .......... 5

*Campbell v. Facebook, Inc.*
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 14

*Casey v. U.S. Bank Nat'l Ass'n*
127 Cal. App. 4th 1138 (2005) .......... 12

*Chandler v. State Farm Mut. Auto. Ins. Co.*
598 F.3d 1115 (9th Cir. 2010) .......... 3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
*65* F. Supp. 3d 840 (N.D. Cal. 2014) .......... 4

*Cline v. Reetz-Laiolo*
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 14

*D'Angelo v. Penny Opco, LLC*
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 15

*Dawidzik v. Tesla, Inc.*
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 5

*Doe v. Eating Recovery Center LLC*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 10

*Doe v. GoodRx Holdings, Inc.*
2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 15

*Esparza v. UAG Escondido A1 Inc.*
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 12

*In re Facebook Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ........ 6

*Faulkner v. ADT Sec. Servs.*
706 F.3d 1017 (9th Cir. 2013) ........ 13

*Flanagan v. Flanagan*
27 Cal. 4th 766 (2002) ........ 13

*Garcia v. Blackhawk Network, Inc.*
2026 WL 925028 (C. D. Cal. Apr. 1, 2026) ........ 5, 6

*Garcia v. Truist Fin. Corp.*
--- F. Supp. 3d ----, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) ........ 6

*Gutierrez v. Converse Inc.*
2024 WL 3511648 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) ........ 8, 10

*Heiting v. Taro Pharms. USA, Inc.*
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 8, 12

*Javier v. Assurance IQ, LLC*
2022 WL 1744107 (9th Cir. May 31, 2022) ........ 8

*Licea v. Cinmar, LLC*
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 8

*Magliocca v. United Healthcare Servs., Inc.*
2026 WL 878694 (E.D. Cal. Mar. 31, 2026) ........ 5, 6

*Mastel v. Miniclip SA*
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 9

*Matera v. Google Inc.*
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 8

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 15

*Myers v. Dick's Sporting Goods, Inc.*
2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) .......... 6

*People v. Nakai*
183 Cal. App. 4th 499 (2010) .......... 14

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... 4, 5

*R.C. v. Sussex Publishers, LLC*
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 10, 11

*Revitch v. New Moosejaw, LLC*
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 14, 16

*Rodriguez v. Brushfire Recs.*
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 5

*Rodriguez v. Culligan Int'l Co.*
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 5

*Rodriguez v. Ford Motor Co.*
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 12, 13

*Rodriguez v. Google*
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 14

*Rodriguez v. Google LLC*
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 9

*Saleh v. Nike, Inc.*
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 15

*Semien v. PubMatic Inc.*
2026 WL 216333 (E.D. Cal. Mar. 31, 2026) .......... 5

*Shuckett v. DialAmerica Mktg. Inc.*
2019 WL 913174 (S.D. Cal. Feb. 22, 2019) .......... 3

*Sisti v. Bosley Inc.*
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......... 5, 9

*Smith v. YETI Coolers, LLC*
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) .......... 12

*Smith v. YETI Coolers, LLC*
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 12, 15

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) *as revised* (May 24, 2016) .......... 4, 5

*Swarts v. Home Depot, Inc.*
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 7, 11, 14, 16

*Tanner v. Smile Brands Inc.*
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) .......... 5

*Thomas v. Papa Johns Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 15

*Torres v. Prudential Financial, Inc.*
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 9

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .......... 4, 5

*United States v. McIntosh*
833 F.3d 1163 (9th Cir. 2016) .......... 16

*Valenzuela v. Kroger Co.*
2025 WL 851075 (C.D. Cal. Mar. 13, 2025) .......... 13

*Valenzuela, v. Keurig Green Mountain, Inc.*
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 9

*Williams v. DDR Media, LLC*
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 9

*Wooten v. BioLife Plasma Servs. L.P.*
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 5

*Yockey v. Salesforce, Inc.*
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 15

Statutes

Cal. Civ. Code §§ 1798.100 *et seq.* .......... 16

Cal. Penal Code § 631(a) .......... passim

Cal. Penal Code § 632 ....................passim

Other Authorities

*Amplify*, https://www.merriam-webster.com/dictionary/amplifying (last visited May 9, 2026) ....................17

Record, https://www.britannica.com/dictionary/record (last visited May 9, 2026) ....................17

## I. INTRODUCTION

This case is part of a wave of putative class actions seeking to weaponize California's wiretapping and eavesdropping statutes—provisions originally enacted to combat telephone surveillance and secret recordings—against ordinary website analytics tools. But this complaint is different. It simultaneously pleads (632) (with no calls alleged). As to the section 631(a) claim, there is no allegation of the lynchpin for a wiretapping or eavesdropping claim – action that took place while a communication was "in transit". And the section 632 claim is an attempt to lump the basic "call recording" section of the statute in with the latest wave of pixel related wiretapping claims. While the legislature is considering amendments to reign in CIPA, plaintiffs' counsel, afraid of losing their revenue generation from the CIPA deluge, are trying to sidestep these amendments by pleading ever expanding and new theories under CIPA hoping to gain some new foothold to avoid losing their non-injury statutory damage theories.

Defendant Lulu & Georgia, Inc. ("Lulu & Georgia") is a home décor company that operates the website www.luluandgeorgia.com. Plaintiff Elizabeth Correia ("Plaintiff") visited the website in December 2025, browsed for rugs, viewed rug listings, and searched for rugs using the search bar function on the website. She now claims that Lulu & Georgia's use of standard third-party tracking technologies, deployed by virtually every commercial website in operation today, violated California Penal Code sections 631(a) and 632. Plaintiff's claims lack merit.

As to her claim under section 631(a), Plaintiff fails to allege that the third-party companies read, or even attempted to read, her communications while they were in transit, as the statute requires. Nor does she allege that Lulu & Georgia knowingly and intentionally aided those third parties in committing any such violation.

As to her claim under section 632 (commonly referred to as the "call recording" statute), California courts have developed a strong presumption that internet communications, including retail browsing activity and search queries, are not "confidential" within the meaning of the statute, and nothing about a search for rugs on a home furnishings website overcomes that presumption. But perhaps more fundamentally, that claim is not based on a call that was recorded. It is based on an electronic written communication (typed by the plaintiff) that is allegedly stored in an electronic written format. No recording has occurred. Plaintiff's theory essentially creates an obligation to delete an electronic written communication after it is received. This is found nowhere in the statute.[1]

For these reasons, and as more fully explained below, Lulu & Georgia respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

## II. ALLEGATIONS IN THE COMPLAINT

The Complaint alleges that Lulu & Georgia is an "interior home décor company" that sells home items to customers via its website, www.luluandgeorgia.com (the "Website"). (Compl. ¶¶ 1-2.) Plaintiff alleges that she visited the Website between December 11, 2025, and December 26, 2025. (*Id.* ¶ 8.) She alleges that upon landing on the Website, she saw a "pop-up privacy banner" that informed her of the cookies and tracking technologies used on the Website. (*Id.* ¶ 9.) Plaintiff alleges that she "opened the cookie settings and rejected the optional tracking cookies." (*Id.*) Thereafter, Plaintiff browsed the Website for rugs, viewed rug listings on the Website, and "conducted a search on the Website's search bar for 'rugs'." (*Id.* ¶ 10.)

Plaintiff alleges that Lulu & Georgia "implemented tracking code on its website that enabled" three third-party companies—Google LLC, HubSpot, Inc.,

[1] Taken to its logical conclusion, Plaintiff's theory would create a section 632 claim every time someone sends an email and the recipient does not delete it.

and Meta Platforms, Inc.—"to collect and intercept" her communications with the Website (*id.* ¶ 2), namely "the search terms she entered on the Website's search bar, the specific products she viewed, and items she added to her cart." (*Id.* ¶11.) She further alleges that, shortly after her visit, she received "retargeting emails" from Lulu & Georgia promoting some of the rugs she had viewed. (*Id.* ¶ 8.)

Based on these allegations, Plaintiff brings a putative class action complaint against Lulu & Georgia asserting violations of California Penal Code sections 631(a) and 632. (*Id.* ¶¶ 94-113.)

## III. THE COURT SHOULD DISMISS THE COMPLAINT

### A. Legal Standard

Because standing pertains to the federal court's subject matter jurisdiction, it is properly raised by a 12(b)(1) motion. *Shuckett v. DialAmerica Mktg. Inc.*, 2019 WL 913174, at *1 (S.D. Cal. Feb. 22, 2019). Where standing is challenged under FRCP 12(b)(1), the plaintiff bears the burden of establishing Article III standing to assert the claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must at least allege sufficient facts "to raise a right to relief above the speculative level." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the Court must not "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' Mere 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'" *Ahmed*

*v. Cnty. of Santa Clara*, 2021 WL 105620, *3 (N.D. Cal. Jan. 12, 2021) (citations omitted). Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 65* F. Supp. 3d 840, 849 (N.D. Cal. 2014) (cleaned up).

**B. Plaintiff Lack Standing To Pursue Her Claim Under California Penal Code Section 631(a)**

The Constitution confers limited authority on each branch of the Federal Government*.* *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) *as revised* (May 24, 2016). To the end, Article III of the Constitution "endows the federal courts with '[t]he judicial Power of the United States'" – a power that, while not fully explained, "extends only to 'Cases" and 'Controversies[.]'" *Id*. (quoting Art. III, §§ 1-2). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotations omitted). The Supreme Court has identified three elements used to ensure a plaintiff has the necessary personal stake: (1) plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent; (2) there must be a causal connection between the injury and the complained-of conduct; and (3) it must be likely the injury will be redressed by a favorable decision. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025).

In *Spokeo* and *TransUnion*, the Supreme Court addressed, and made more definite, the requirement that an injury be concrete. *Popa*, 153 F.4th at 788. In *Popa*, the Ninth Circuit applied this concreteness analysis to alleged injuries arising from technology used to capture a user's interactions with a single website. *Id*. at 786, 788-95. In doing so, the court made clear that generalized claims of violations of a free-roaming privacy right – even if purportedly enshrined in statute – are insufficient to demonstrate the necessary concrete injury. *Id*. Instead, the Ninth

Circuit held that, under *Spokeo* and *TransUnion*, a concrete injury exists only if the harm experienced by plaintiff is one that has traditionally been actionable in our nation's legal system – a determination made by comparing the *specific* harm alleged by plaintiff to a *specific* common-law tort, such as invasion of privacy.[2] *Id.* As the Ninth Circuit confirmed, this analysis must be undertaken even where plaintiff alleges a statutory violation. *Id.*; *see also TransUnion*, 594 U.S. at 424-27.

Here, the only *specific* harm alleged by Plaintiff is collection of her search inquiry for "rugs", browsing activity, and the items she added to her cart. (Compl. ¶ 10.)[3] This alleged harm is not concrete because there is no reasonable expectation of privacy in the allegedly collected data and because the alleged collection does not constitute highly offensive conduct historically actionable at common law. *See*, *e.g.*, *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5-6 (C. D. Cal. Apr. 1, 2026); *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694, at *3-4 (E.D. Cal. Mar. 31, 2026); *Sisti v. Bosley Inc.*, 2026 WL 1223927, at *3 (C.D. Cal. Apr. 27, 2026); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025); *Tanner v. Smile Brands Inc.*, 2026 WL 1110698, at **4-5 (S.D. Cal. Apr. 23, 2026).[4] *But see Semien v. PubMatic Inc.*, 2026 WL 216333, at *4-5 (E.D.

---

[2] A common law invasion of privacy claim requires (1) an intentional intrusion into a place or matter as to which the plaintiff has a reasonable expectation of privacy (2) that was highly offensive. *Borrello v. Respironics Cal., LLC*, 2024 WL 1496215, at *8 (S.D. Cal. Apr. 5, 2024).

[3] Plaintiff alleges that the purported third party trackers "intercept" a user's communications, including "the exact search term the user communicated to Defendant," "the name of the particular product the Website user is viewing," and "the price of the product the user has initiated checkout for." (Compl. ¶¶ 72, 74-75.)

[4] The same conclusion has been reached for cases brought under section 638.51 of CIPA. *See Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at **4-5 (C.D. Cal. Dec. 29, 2025); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at **5-7 (C.D. Cal. Dec. 15, 2025); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at **3-5 (S.D. Cal.

Cal. Mar. 31, 2026) (finding concrete privacy injury where plaintiffs alleged that the tracker could collect "sensitive information like health status and treatment, travel plans, political affiliation, sexual orientation, and more"); *Garcia v. Truist Fin. Corp.*, --- F. Supp. 3d ----, 2026 WL 972328, at *5 (C.D. Cal. Mar. 25, 2026) (finding plaintiff alleged concrete harm to establish standing where information shared "related to his citizenship, housing, and employment statuses").

Further, to the extent Plaintiff relies on *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), that reliance is misplaced. In *In re Facebook*, plaintiffs alleged Facebook tracked their internet browsing even when they logged out of Facebook, despite representing that logged-out data would not be collected. 956 F.3d at 602. Facebook's plug-in was employed by seven million websites, allowing it to "amass a great degree of personalized information" including "an individual's likes, dislikes, interests, and habits over a significant amount of time," all of which could be tied to the Facebook user's identity. *Id.* at 599, 603. Because Facebook also had access to it users' profiles, which "could include … employment history and political and religious affiliations," its collection of "a comprehensive browsing history of an individual" allowed it to "gain[] a cradle-to-grave profile without users' consent." *Id.* Here, Plaintiffs allege collection of basic browsing data. More is required to establish a concrete injury. *See Garcia*, 2026 WL 925028, at *5-6; *Magliocca*, 2026 WL 878694, at *3-4. Accordingly, Plaintiff's section 631(a) claim must be dismissed for lack of Article III standing.

---

Nov. 3, 2025); *Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *3-5 (E.D. Cal. Apr. 17, 2026).

### C. Even if Plaintiff Has Standing to Pursue Her Claim, Plaintiff Nonetheless Fails To State A Claim For Violation Of California Penal Code Section 631(a)

California Penal Code section 631(a) generally prohibits wiretapping. It contains four clauses that create "four avenues for relief." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023). Those clauses state a violation of the statute occurs when:

> (1) a person by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument;
>
> (2) a person willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit [or passing over any wire, line, or cable, or is being sent from, or received at any place within this state];
>
> (3) a person uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; and
>
> (4) a person aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.

*Id.* Here, Plaintiff alleges that the *third-party companies* violated one of the first three clauses of section 631(a) and that Lulu & Georgia violated the fourth clause by purportedly aiding and abetting the third-party companies' alleged violation. (Compl. ¶¶ 5, 102.) But, as explained below, Plaintiff has failed to allege a violation of section 631(a) or that Lulu & Georgia aided and abetted any violation.

#### *1. Plaintiff fails to allege that the third-party companies violated section 631(a)'s first clause*

The first clause of section 631(a) prohibits a person from intentionally tapping or making any unauthorized connection with "any telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a). Courts have "consistently" held that the first clause applies only to "communications over telephones and not

through the internet." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023); *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *6 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) (granting defendant's motion for summary judgment on plaintiff's section 631(a) claim because "the first clause of section 631(a) does not apply to communications sent through the chat feature on Defendant's website"); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1014 (C.D. Cal. 2023) ("[C]ourts have repeatedly found that this clause applies only to eavesdropping on 'telegraph and telephone' wires, lines, cables, or instruments, and not to any eavesdropping that is alleged to have occurred as to communications over the internet.").[5]

Here, Plaintiff does not—and cannot—allege that her communications traveled via a telegraph or telephone wire. The Complaint concerns her browsing activities and use of the search bar on the Website, both of which are internet-based activities. (Compl. ¶¶ 8, 10, 11.) Plaintiff has therefore failed to allege a violation of section 631(a)'s first clause.

#### ***2. Plaintiff fails to allege that the third-party companies violated section 631(a)'s second clause***

Under section 631(a)'s second clause, a plaintiff must allege that a third-party "read[], or attempt[ed] to read . . . or learn[ed] the contents or meaning of any message, report, or communication while the same is in transit . . . or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). The "crucial question" under the second clause is whether the plaintiff alleged that the

---

[5] To the extent Plaintiff relies on *Matera v. Google Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) or *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), for the proposition that the first clause of section 631(a) applies to internet communications, that reliance is misplaced. In both cases, the courts were addressing section 631(a)'s second clause, not the first. In any event, the Ninth Circuit's recent affirmance of *Gutierrez* expressly confirmed that the first clause does not apply to internet communications.

third-party "***read*** one of his communications ***while it was still in transit***, i.e., before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). In *Torres v. Prudential Financial, Inc.*, for example, the district court granted summary judgment against the plaintiff because the third-party vendor did not read or attempt to read contents of the communication while in transit. 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). The court emphasized that analyzing data *after* it has been captured "has no bearing on whether [the third party] read the communications while they were in transit," and that imposing liability in such circumstances "would stretch CIPA's statutory language too far" by improperly sweeping into section 631(a)'s purview "any hypothetical future attempt[s] to read or understand the meaning of a communication." *Id.* at *6.

While *Torres* is a summary judgment opinion, its holding is based on the plain language of Section 631(a). Consequently, to adequately plead a claim, Plaintiff must plausibly allege facts meeting the language of the statute—i.e., facts to plausibly allege that the third-party companies *read or attempted to read* Plaintiff's communication *while it was in transit*. *Mastel*, 549 F. Supp. 3d at 1137; *Sisti*, 2026 WL 1223927, at ** 5-6 (dismissing complaint for lack of Article III standing but observing that plaintiff's section 631(a) claim also failed on the merits because he "provides even less support for the notion that Meta or Facebook could have intercepted 'and read' the contents of his communications while they were still in transit to [the defendant] . . . ."); *see also, e.g.*, *Rodriguez v. Google LLC*, 2022 WL 214552, *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough"); *Valenzuela*, *v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (plaintiff must do more than "restate the pleading requirement of real time interception"). Other courts are in accord.[6]

[6] *See Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (granting summary judgment because the third party could not read the plaintiff's

Here, Plaintiff has not alleged that the third-party companies "read[] or attempt[] to read the contents of the communication while they are in transit." *Torres*, 2025 WL 1135088, at *5. Rather, she alleges that the third-party companies analyze the data ***only after*** interception and collection by those companies. (Compl. ¶¶ 29, 38, 45, 47, 60, 63.) That is insufficient: analyzing data *after* interception and collection "has no bearing on whether [the third-party vendors] read the communications while they were in transit." *Torres*, 2025 WL 1135088, at *5. Plaintiff's allegations that the third-party companies "view[ed] the intercepted communications" "in order to analyze" them, are similarly unavailing. (Compl. ¶¶ 27, 45). This does not amount to "an attempt to understand or interpret the substantive meaning of a communication" while in transit. *Torres*, 2025 WL 1135088, at *6; *Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) ("Reading or learning the contents of a communication requires some effort at understanding the substantive meaning of the communication." (internal quotation omitted)).

The Northern District of California's recent decision in *R.C. v. Sussex Publishers, LLC* is particularly instructive. There, the court dismissed a section 631(a) claim based on allegations nearly identical to those here. *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7-8 (N.D. Cal. Mar. 28, 2025). Plaintiffs alleged that "information is sent 'to Google for processing' and later, '[o]nce Google Analytics receives, views, reads, and processes the data, it aggregates and organizes the data based on particular criteria.'" *Id.* at *7. The court concluded that

---

communication while in transit because it was "automatically subjected to an algorithm that transform[ed] the data into an incomprehensible 'hash' [with] no substantive meaning"); *Gutierrez*, 2024 WL 3511648, at *6, *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) (granting summary judgment because there was no evidence that the third-party "reads or attempts to read or learn the contents of communications while they are in transit").

"[t]hese allegations do not support a plausible inference Google reads the information 'while the same is in transit.'" *Id.* The same conclusion follows here. Plaintiff alleges that "once the Google Analytics code on the website 'collects data, it packages that information up and sends it to Google Analytics to be processed into reports," and that "***[w]hen*** Google Analytics processes data, it aggregates and organizes the data based on particular criteria." (Compl. ¶ 38) (emphasis added). These allegations are materially indistinguishable from those the *R.C.* court found insufficient. And the allegations regarding the two other third-party tracking companies do not fare any better.[7] Plaintiff has therefore failed to allege that any third-party company read or attempted to read her communications while in transit.

#### 3. *Plaintiff fails to allege that the third-party companies violated section 631(a)'s third clause*

"A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Swarts*, 689 F.Supp.3d at 744. Because Plaintiff has not sufficiently alleged a violation of the first two clauses, her "claim for violations of § 631(a) under the third clause necessarily fail as well." *Id.*

#### 4. *Even if the third-party companies violated section 631(a), Plaintiff fails to allege that Lulu & Georgia aided and abetted the third-party companies' violation*

Section 631(a)'s fourth clause makes liable any party that "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in section 631(a). Courts interpret this clause as requiring that the defendant *knowingly* and *intentionally*

[7] *See* Compl. ¶¶ 44-45 ("HubSpot's interception of users' communications on the Website occurs 'in transit'" and "[t]hat information is ***then analyzed*** by HubSpot") (emphasis added); Compl. ¶ 60 ("***After*** collecting and intercepting website users information, Meta processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences.") (emphasis added).

aided the third party in violating the statute. *See Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (dismissing section 631(a) claim where the plaintiff's allegations did "not speak to Defendant's knowledge"); *Heiting*, 709 F. Supp. 3d at 1019 (dismissing section 631(a) claim where plaintiff did not allege that the defendant "acted with the requisite knowledge or intent to aid and abet [the third party's] purported CIPA violation"). It is not enough that the defendant merely assisted the third party without knowledge that the third party's actions violated section 631(a). *See Smith v. YETI Coolers, LLC*, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025) (explaining that a plaintiff must establish that a defendant "knowingly agreed with or employed [a third party] to engage in conduct that violated the wiretapping statute"); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (dismissing section 631(a) claim where the plaintiff did not "allege that Defendant knew" the third party was violating section 631(a)). This interpretation is consistent with California caselaw, which has "long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005).

Here, Plaintiff does not allege that Lulu & Georgia knowingly and intentionally aided any of the third-party companies in violating section 631(a). Plaintiff merely alleges that "by implement[ing] tracking code on its website" (Compl. ¶ 2), Lulu & Georgia "aids, agrees with, employs, or conspires" to permit the third-party companies in violating section 631(a). (Compl. ¶ 5.) But mere use of the tracking code does not infer that Lulu & Georgia "***knew***" that the third-party companies' interception of website communications "violate[d] the statute" or that Lulu & Georgia's "***purpose***" in using the tracking code was to aid the third-party companies "to commit those [unlawful] acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942-43 (N.D. Cal. 2024) (dismissing section 631(a) claim because plaintiff did not allege that the defendant "aided, agreed with, or employed the third

party *to* perform acts that violate the wiretapping statute"); *Rodriguez*, 722 F. Supp. 3d at 1124. Courts have held that similar allegations are insufficient. For example, a defendant did not aid and abet a third-party in unlawfully intercepting a communication merely by "entering into a contract" with the third-party and using the purportedly unlawful software. *Valenzuela v. Kroger Co.*, 2025 WL 851075, at *3 n.6 (C.D. Cal. Mar. 13, 2025). For the same reasons, Plaintiff's allegation that Lulu & Georgia used the tracking code on the Website does not establish an aiding and abetting violation of the statute.

### D. <u>Plaintiff Fails To State A Claim For Violation Of California Penal Code Section 632(a)</u>

California Penal Code section 632 creates liability for "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ." Cal. Penal Code § 632(a). The statute defines "confidential communication" as one "carried on ***in circumstances*** as may reasonably indicate that any party to the communication desires it to be confined to the parties" but excludes a communication in "any other circumstance in which the parties []may reasonably expect that the communication may be overheard or recorded." *Id.* § 632(c) (emphasis added). "[A] conversation is confidential under Section 632 if a party to that conversation has an ***objectively*** reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (emphasis added). Thus, the ***circumstances*** of the communication (not only its contents) must objectively demonstrate a reasonable expectation of confidentiality. "'To prevail against the 12(b)(6) motion, then, [plaintiff] would have to allege facts that would lead to the plausible inference that his was a confidential communication—that is, a communication that he had an objectively reasonable expectation was not being recorded.'" *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1020 (9th Cir. 2013).

***1. Plaintiff fails to plausibly allege that her communications with the Website were confidential, as required by section 632***

"California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632" because they are recorded and can easily be shared by their recipients. *Campbell v. Facebook*, *Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). Thus, "in California, courts have developed a presumption that Internet communications"—specifically including "browsing activity"—"do not reasonably give rise" to an expectation of confidentiality. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *3 (N.D. Cal. Oct. 23, 2019) (collecting cases and holding "browsing activity" is not confidential). Even "private" emails, chats, and other internet communications are not confidential under Section 632. *People v. Nakai*, 183 Cal. App. 4th 499, 518–19 (2010) (even though defendant intended his Yahoo instant messages to be private, he could not have a reasonable expectation of confidentiality and Section 632 did not apply); *Campbell*, 77 F. Supp. 3d at 849 (same re private Facebook messages); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018) (same re private emails).

Thus, to "rebut[] California's presumption against online confidentiality," as defined in CIPA Section 632, plaintiffs must "plead unique, definite circumstances" that show an "objectively reasonable expectation that . . . *nobody* . . . would record the [online] communications." *Rodriguez v. Google,* 2021 WL 2026726, at **6-7 (N.D. Cal. May 21, 2021) (cleaned up); *see, e.g.*, *Revitch*, 2019 WL 5485330, at *3 (dismissing section 632 claim because allegations about "browsing activity," "form field entries," and inquiries about items "on a retail website" did not "warrant[] a deviation from this general rule"); *Swarts*, 689 F. Supp. 3d at 742, 746-47 (same where inquiries related to home improvement products he had purchased, whether

those products could be exchanged, and pending orders for products which were available for sale on Defendant's website).[8]

In contrast, courts have found internet communications to be confidential only in narrow circumstances involving uniquely sensitive subject matter—none of which is present here. One such circumstance is when the communication involves protected health information. *See, e.g.*, *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform – by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms – constitute confidential communications" for purposes of a section 632 violation); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 954 (N.D. Cal. 2024); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) ("[H]ealth-related communications with a medical provider are almost uniquely personal."). Another such circumstance is when the communication involves sensitive financial information. *See, e.g.*, *Smith*, 754 F. Supp. 3d at 943 (finding that plaintiff had "plausibly alleged" that she "reasonably expected" defendant "would keep [her personally identifiable and credit card] information private and not disclose it to third parties" for purposes of a section 632 violation).

Here, Plaintiff alleges that her communications with Lulu & Georgia included "the search terms she entered into the Website's search bar, the specific products she

---

[8] Courts broadly recognize that individuals lack a reasonable expectation of privacy in their activity on the internet, a principle that extends beyond the section 632 context. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024) ( "Generally, the internet is not a place where users have a reasonable expectation of privacy." (collecting cases)); *D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793, at *10–11 (S.D. Cal. Oct. 24, 2023) ("accepted community norms around conversations in this type of space (a commercial website for selling merchandise) point away from a reasonable expectation of privacy"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524–25 (C.D. Cal. 2021) (no reasonable expectation of privacy in plaintiff's activity on defendant's commercial website).

viewed, and items she added to her cart." (Compl. ¶ 11.) Plaintiff's browsing activity and search inquiry for "rugs" cannot overcome the presumption against online confidentiality. These communications with Lulu & Georgia on the Website are not materially different from the communications in *Revitch* or *Swarts*. Whether the plaintiff is browsing for clothing, home improvement products, or—as is the case here—rugs, the end result is the same: the presumption against online confidentiality cannot be defeated. *See Revitch*, 2019 WL 5485330, at *2 ("Nothing about these particular internet communications – inquiring about items of clothing on a retail website – warrants a deviation from this general rule" that internet communications do not satisfy the statute); *Swarts*, 689 F. Supp. 3d at 742, 746-47 (same where inquiries related to home improvement products he had purchased, whether those products could be exchanged, and pending orders for products which were available for sale on Defendant's website). Accordingly, Plaintiff fails to allege a section 632(a) claim.[9]

### *2. The section 632(a) claim fails for additional reasons*

Section 632 prohibits using "an electronic amplifying or recording device to eavesdrop upon or record" a confidential communication. Cal. Penal Code § 632(a). But section 632 does not otherwise define either "amplifying" or "recording." As such, these terms are to be interpreted according to their ordinary meaning. *See United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be

[9] Plaintiff's allegations regarding her engagement with the cookie banner, and choice to "reject[] the optional tracking cookies" (Compl. ¶ 9) has no bearing on the section 632 analysis. Lulu & Georgia cookie banner on its website designed to ensure compliance with the "Do Not Sell" provisions of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100 *et seq.*, does not convert an otherwise innocuous term, like "rugs", or mundane browsing activity (*see* Compl. ¶ 11) into confidential communications subject to section 632 protections.

interpreted as taking their ordinary, contemporary, common meaning." (cleaned up)).

Neither term, given its ordinary meaning, reaches the alleged conduct here. ***First***, the ordinary meaning of "amplifying" is "to increase the strength or amount of *especially* . . . to make louder."[10] An example best illustrates this point. Imagine two people conversing across a park. With a parabolic microphone, a bystander could amplify their voices and overhear the exchange from a distance. A parabolic microphone is the quintessential amplifying device because it increases the strength or volume of a communication. But that is not what Plaintiff alleges. Nor can she. The tracking technologies do not amplify any communication. They merely process data transmitted in digital form. ***Second***, the alleged tracking technologies are not "recording" Plaintiff's communications within the ordinary meaning of that term. "Recording" means "to store (something, such as sounds, music, images, etc.) on tape or on a disk so that it can be heard or seen later."[11] That definition contemplates capturing a transient communication—something spoken or otherwise expressed in a form that would otherwise be lost—and preserving it for later access. That concern is not implicated here. Plaintiff's alleged "communications" (*i.e.*, search terms entered into a search bar), were transmitted in written, digital form and were recorded from the moment Plaintiff pressed "Enter." At most, the alleged tracking tools here captured an electronic copy of an electronic communication, without ever changing its medium. Because Plaintiff's communications were already in recorded form when they left her browser, the tracking tools did not (and

---

[10] *Amplify*, https://www.merriam-webster.com/dictionary/amplifying (last visited May 9, 2026).

[11] Record, https://www.britannica.com/dictionary/record (last visited May 9, 2026).

could not) "record" them within the meaning of section 632. This provides an independent basis for dismissal.[12]

***Second***, Plaintiff's section 632 claim also fails because she knowingly and voluntarily transmitted the communications at issue in written form, expecting Lulu & Georgia to receive and act on them. Plaintiff affirmatively alleges that she "conducted a search on the Website's search bar" (Compl. ¶ 10), while simultaneously claiming she "did not reasonably expect" Lulu & Georgia to "record [her] communications." (Compl. ¶ 111.) She cannot have it both ways. Plaintiff cannot demand that Lulu & Georgia receive and respond to her written requests while also claiming a reasonable expectation that no record of those requests would exist. Taken to its logical conclusion, Plaintiff's theory imposes an obligation to delete rather than a prohibition on recording. Section 632 requires no such thing.

///

///

///

///

///

///

///

///

///

///

---

[12] Plaintiff's allegation that the "Third Parties' Tracking Code are 'electronic amplifying or recording device[s]" (Compl. ¶ 108), is conclusory and unsupported by any factual underpinnings. All conclusory allegations, such as this, cannot be accepted as true. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Id.* (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted)).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss the Complaint.

Dated: May 11, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ P. Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
KEVIN MURPHY
RANA SALEM

*Attorneys for Defendant*
Lulu & Georgia, Inc.