**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com
idiaz@bursor.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ELIZABETH CORREIA, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

LULU & GEORGIA, INC.,

Defendant.

Case No. 3:26-CV-01186-GPC-JLB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Date: July 24, 2026
Time: 1:30 p.m.
Courtroom: 12A
Judge: Hon. Gonzalo P. Curiel

## TABLE OF CONTENTS

PAGE(S)


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff Alleges An Injury-In-Fact Sufficient for Article III Standing. ..... 2

B. Plaintiff Sufficiently Alleges A Violation Of CIPA § 632(a). ..... 6

1. Plaintiff's Communications Were Confidential. ..... 6

2. The Tracking Code Recorded Plaintiff's Communications. ..... 8

3. Plaintiff Did Not Consent to Defendant's or The Third Parties' Recordings. ..... 10

C. Plaintiff Sufficiently Alleges A Violation Of CIPA § 631(a). ..... 11

1. Plaintiff Sufficiently Alleges a Violation of Clause Two. ..... 11

2. Plaintiff Sufficiently Alleges a Violation of Clause Three. ..... 17

3. Plaintiff Sufficiently Alleges a Violation of Clause Four. ..... 17

III. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aquino-Roraldo, et al. v. Medical Management Int'l, Inc.*,
2026 WL 1092905 (D. Or. Feb. 13, 2026) .......... 4

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 6

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 8

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 5

*Casillas v. Six Flags Ent. Corp.*,
2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) .......... 18

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 18

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 12, 16

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) .......... 5

*Doe v. Call-on Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 2, 12, 16

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 13, 15

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 18

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 12, 16, 19

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)........................................................................................7

*Frasco v. Flo Health, Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) ........................................................15

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ..............................................................passim

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026)..........................................................3, 5

*Gianne v. Accor Mgmt. US Inc.*,
2026 WL 925522 (C.D. Cal. Mar. 31, 2026)...................................................6, 12, 16

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ...............................................12, 16, 17

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ............................................................13

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)..............................................................12, 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)..........................................................................passim

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)..................................................................17

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ...................................................2, 14, 15

*JustM2J LLC v. Brewer*,
2025 WL 3208815 (E.D. Cal. Nov. 17, 2025) ..........................................................9

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)..........................................................................................10

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .........................................................8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)..................................................................16

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 12, 16

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 6

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 1, 2, 4, 6

*People v. Aguilar*,
16 Cal. 4th 1023 (1997) .......... 12

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .......... 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 4

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 16

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 12, 13, 14

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 10, 15

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 19

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 16, 17

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... passim

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......... 1, 2, 4, 6

*Sisti v. Bosley Inc.*,
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......... 16

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 6

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 14

*Smith v. Rack Room Shoes*, Inc.,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ passim

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 19

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 17, 18

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 18

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 6

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 2, 5

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 10

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ........ 10

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 16

*Valenzuela v. Kroger Co.*,
2025 WL 851075 (C.D. Cal. Mar. 13, 2025) ........ 20

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ........ 10

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ passim

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ........ 13

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........................................................ 8

**STATUTES**

Cal. Penal Code § 631(a) ........................................................................ passim

## I. INTRODUCTION

In 2018, California passed the California Consumer Privacy Act. "Today, when California users visit a website, they can expect to see a pop-up screen giving them the *option to opt out* of various types of tracking." *Wiley v. Universal Music Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 3654085, at *4 (N.D. Cal. Dec. 17, 2025) (emphasis added).

When Plaintiff visited Lulu & Georgia's website, www.luluandgeorgia.com/ (the "Website"), she saw a pop-up screen telling her, in bold font, "**We Value Your Privacy**." Complaint ("Compl."), ¶¶ 3-4, 80-81 (ECF No. 1). She went to the Privacy Preference Center summarizing the data Defendant's software was tracking and clicked a big "Reject All" button. *Id.* ¶¶ 9, 12-13, 82-83. Despite Plaintiff's explicit instruction, Defendant enabled various Third-Party tech companies to track her anyway. *Id.* ¶¶ 13, 82.

In arguing Plaintiff lacks standing or that she's failed to state a claim, Defendant's Motion to Dismiss ("MTD" or "Motion") fights yesterday's legal battle. MTD at 4-6, 14-16 (ECF No. 28). Today's case law makes clear that a defendant who deploys a CCPA-compliant cookie banner on its website, offers consumers the option to reject tracking cookies and technologies, and yet continues to track them after they have rejected, causes consumers a concrete injury. *See Wiley*, --- F. Supp. 3d ----, 2025 WL 3654085, at *6; *Shah v. Politico LLC*, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026); *Shah v. MyFitnessPal, Inc.*, --- F.Supp.3d ----, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 860 (N.D. Cal. 2025); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025). Tracking someone after she has explicitly told you she does not want to be tracked is about as "clear [of an] invasion of the historically recognized right to privacy" as any. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("*In re Facebook Tracking*"). "Therefore, Plaintiffs have standing." *Id.*

Moreover, California courts, including this one, have long recognized that CIPA "section 631(a) applies to internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022); *Doe v. Call-on Doc, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) (Curiel, J.).

The Court should thus deny Defendant's Motion.

## II. ARGUMENT

### A. Plaintiff Alleges An Injury-In-Fact Sufficient for Article III Standing.

Courts have consistently held a plaintiff suffers "a clear invasion of the historically recognized right to privacy," where, as here, a defendant tracks a Plaintiff's online activity "without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *In re Facebook Tracking*, 956 F.3d at 599. This is true "'no matter how sensitive' or personal users' [tracked] browsing histories," are. *Id*. at 598. As such, in recent years, courts have nearly uniformly found standing in cookie banner rejection cases like this one.

The Supreme Court holds that the "disclosure of private information" and "intrusion upon seclusion" are "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," and confers Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). As such, the Supreme Court in TransUnion held that "the 1,853 class members whose [credit] reports were disseminated to third parties suffered a concrete injury in fact under Article III." *Id*. at 433. Almost every single cookie banner rejection case has found standing based on one of these two theories. *See Wiley*, --- F.Supp.3d ----, 2025 WL 3654085, at *6; *Politico*, 2026 WL 323269, at *4; *MyFitnessPal*, --- F. Supp. 3d ----, 2026 WL 216334, at *3; *Gabrielli*, 815 F. Supp. 3d at 860; *Pemberton*, 2025 WL 3268404, at *3. Defendant only cites a single case to the contrary—*see*

*Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *1 (C.D. Cal. Apr. 1, 2026)—and it is readily distinguishable.

In *Wiley*, --- F.Supp.3d ----, 2025 WL 3654085, at *6, the plaintiffs "adequately alleged a concrete injury-in-fact" where plaintiffs "affirmatively opted out of advertising and analytics cookies, and [the defendant] disregarded those choices." Because of the defendant's "misrepresentation to users about whether they would be tracked" the court deemed the alleged harm "highly offensive" and thus sufficiently analogous to common law tort of intrusion upon seclusion. *Id.* Further, when discussing the plaintiffs' reasonable expectation of privacy under the claims for invasion of privacy and intrusion upon seclusion, the court found that "[w]hen evaluating Californians' reasonable privacy expectations, the CCPA's provisions are highly relevant 'customs, practices, and circumstances,'" to be considered because "they provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations about their ability to opt out of websites' collection of data for profit." *Id.* at *4. (citing *In re Facebook Tracking*, 956 F.3d at 602).

Similarly, in *Shah v. MyFitnessPal, Inc.*, --- F. Supp. 3d ----, 2026 WL 216334, at *3, the court found the plaintiffs' alleged harm was similar to the tort of "public-disclosure-of-private-facts" where the defendant told the plaintiffs that "their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared." The court pointed to "the Restatement (Second) of Torts", which "explains that misrepresenting how private information will be used can constitute such an invasion of privacy[.]" *Id.* "In short, because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, [the court found] plaintiffs [] sufficiently pleaded an injury-in-fact for the purposes of Article III." *Id.*; *see also Gabrielli*, 815 F. Supp. 3d at 860 (finding sufficiently concrete injury for Article III standing where

the plaintiff rejected the use of cookies on the websites yet the defendant "cause[d] the placement and/or transmission of cookies along with user data"); *Pemberton*, 2025 WL 3268404, at *3 (same); *Aquino-Roraldo, et al. v. Medical Management Int'l, Inc.*, 2026 WL 1092905, at *5 (D. Or. Feb. 13, 2026) (acknowledging a line of cases that "involve situations where the defendant allegedly misled users about whether their online activity would be tracked").

Again, in *Shah v. Politico*, 2026 WL 323269, at *4, the court found that the inquiry of whether the harm was concrete turned on "whether a plaintiff has a legitimate expectation of privacy." *Id.* (cleaned up). The court further found the plaintiff had a legitimate expectation of privacy given that the defendant presented the plaintiff with the option to "opt out of certain tracking cookies upon entering the Politico site" thereby, setting the expectation that "user data would not be collected, but then collected it anyway." *Id.* (citing *In re Facebook Tracking*, 956 F.3d at 602).

Plaintiff's allegations here mirror the allegations in the above-cited cases because Defendant similarly misrepresented the option to opt out of tracking cookies and enabled this type of tracking, despite Plaintiff's express request to opt out. *See* Compl. ¶¶ 3-4, 9-13, 79-83; *Wiley*, --- F.Supp.3d ----, 2025 WL 3654085, at *6; *Politico*, 2026 WL 323269, at *4; *MyFitnessPal*, --- F.Supp.3d ----, 2026 WL 216334, at *3; *Gabrielli*, 815 F. Supp. 3d at 860; *Pemberton*, 2025 WL 3268404, at *3. Like in these cases, Plaintiff's alleged injury bears a close resemblance to the torts of intrusion upon seclusion and disclosure of private information, although an exact duplicate is not required. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Specifically, Defendant's misrepresentations gave rise to Plaintiff's "legitimate expectation of privacy" and thus, Plaintiff's alleged harm is "highly offensive." *See Wiley*, --- F.Supp.3d ----, 2025 WL 3654085, at *6; *Politico*, 2026 WL 323269, at *4; *MyFitnessPal*, --- F.Supp.3d ----, 2026 WL 216334, at *3; *Gabrielli*, 815 F. Supp. 3d at 860; *Pemberton*, 2025 WL 3268404, at *3.

Accordingly, Plaintiff has sufficiently alleged a concrete injury sufficient for Article III standing.

The only case Defendant cites to the contrary is *Garcia*, 2026 WL 925028, at *5-6. There, the court acknowledged that the misrepresentation gave rise to a legitimate expectation of privacy. *Id.* at *4 ("Defendant created an expectation of privacy when it asked whether she wished to be tracked, and after selecting only 'required' cookies, she felt secure in browsing."). However, the court nevertheless found there was not sufficient standing because "Plaintiff must also allege that the actual intrusion was "highly offensive to the reasonable person," and in its view, tracking people after they've asked not to be tracked is not highly offensive.

*Garcia* is wrong for at least two reasons. First, there is no requirement that a privacy invasion be "highly offensive" for there to be standing. To the contrary, the Supreme Court said that any traditional privacy torts a court looks to is only meant to serve as a "historical or common-law *analogue* for [plaintiff's] asserted injury." *TransUnion*, 594 U.S. at 424 (emphasis added). This however, "does not require an *exact duplicate* in American history and tradition." *Id.* (emphasis added). So, the standing inquiry should not turn on whether a plaintiff's statutory privacy claims *also* meet all the exact common law elements of a privacy tort. As this court noted, various privacy statutes, including "CIPA codifies 'a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.' There is no requirement that *there be additional injury beyond the violation of that right*." *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1105–06 (S.D. Cal. 2025) (Curiel, J.) (emphasis added) (citing *In re Facebook Tracking*, 956 F.3d at 598).

Second, even if high offensiveness were required for Article III standing, the *Garcia* court conceded that "other Courts have held that the [cookie banner] misrepresentation alone is enough to meet the highly offensive bar." 2026 WL 925028, at *5 (*citing Wiley*, --- F.Supp.3d ----, 2025 WL 3654085, at *6); *see also D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 935 (N.D. Cal. 2026)

("Plaintiffs also allege that they selected the 'Reject All' cookies button on Smith & Wesson's popup cookie consent banner… plaintiffs have pleaded facts sufficient to preclude the Court from concluding, as a matter of law, that Smith & Wesson's invasion was not 'highly offensive.'").

Plaintiff is unaware of another case in this Circuit that follows *Garcia*'s reasoning. Nor does Defendant provide any analysis of why this Court should follow *Garcia* in lieu of the five other decisions finding standing under nearly identical circumstances. *See Wiley*, --- F. Supp.3d ----, 2025 WL 3654085, at *6; *Politico*, 2026 WL 323269, at *4; *MyFitnessPal*, --- F.Supp.3d ----, 2026 WL 216334, at *3; *Gabrielli*, 815 F. Supp. 3d at 860; *Pemberton*, 2025 WL 3268404, at *3. For these reasons, the Court should follow the weight of authority and find Plaintiff has alleged a concrete injury sufficient for Article III standing.

**B. Plaintiff Sufficiently Alleges A Violation Of CIPA § 632(a).**

***1. Plaintiff's Communications Were Confidential.***

Defendant argues "Plaintiff's browsing activity and search inquiry for 'rugs' cannot overcome the presumption against online confidentiality." MTD at 14, 16. Defendant misstates the law. "California courts have *never* recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (emphasis added) (quoting *Brown v. Google LLC*, 685 F.Supp.3d 909, 938 (N.D. Cal. 2023)). Simply put, "Section 632 makes no exception on its face for communications over the Internet, or in the 'Internet Age.'" *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024); *accord Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *7 (C.D. Cal. Mar. 31, 2026) ("there is no established legal presumption in California law that internet communications are not confidential under section 632."). To the contrary, web-surfers have "a reasonable expectation of privacy over internet activity," where, as here, "a *company states it will not collect your information*." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1 (S.D.

Cal. May 8, 2024) (emphasis added) (citing *In re Facebook Tracking*, 956 F.3d at 601-03).

Under CIPA § 632, a communication is confidential if the individual had "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002). And if a website tells consumers in large bold text "**We value your privacy**" and consumers click a big "Reject All" button when asked about their tracking preferences, Compl. ¶¶ 3-4, 9, then they have an "objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan*, 27 Cal. 4th at 776-77. Plain and simple.

On this point, *Smith v. Rack Room Shoe*s, Inc., 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) is instructive. There, the court held "Plaintiffs have adequately alleged a confidential communication," when their *online shoe shopping habits* were tracked because the website's privacy policy said it would not be tracked. "Plaintiffs have alleged that they had a reasonable expectation of privacy in their personally identifiable [shoe shopping] browsing history as a result of the disclosures and promises in Rack Room's privacy policy, which can be read to promise that third parties would not intercept or use said bundled information. This is sufficient to satisfy the confidentiality requirement." *Id.* The same is true here. Plaintiff alleges she had an expectation her online furniture shopping session would not be tracked because she clicked the "Reject All" tracking button. Compl. ¶¶ 13 and 111.

Simply put, "courts in this Circuit have repeatedly held that plaintiffs … have a reasonable expectation of privacy in data like what [plaintiff] says was tracked and collected when they expressly reject … the tracking." *Gabrielli*, 815 F. Supp. 3d at 866. Defendant fails to cite a single case holding otherwise.

Instead, Defendant makes a blanket assertion that "[e]ven 'private' emails, chats, and other internet communications are not confidential under Section 632." MTD at 14. But none of the cases cited ever announce, let alone condone, such a blanket rule. And in any event, every single one of those cases is distinguishable

because unlike Defendant here, *the defendants in those cases did not expressly promise not to record the plaintiffs' communications yet did so anyway*. For example, in *People v. Nakai*, 183 Cal. App. 4th 499, 518–19 (2010) (cleaned up), a convicted child molester sought to overturn his conviction by excluding chat messages he made to a minor. The Court said he had no expectation of privacy because Yahoo's "privacy policy indicated that chat dialogues may be shared for the purpose of investigating or preventing illegal activities." *Id.* Defendant's other cases are distinguishable on the same basis.[1]

Accordingly, Plaintiff has sufficiently alleged her communications were confidential under CIPA § 632(a).

***2. The Tracking Code Recorded Plaintiff's Communications.***

Defendant argues that Plaintiff's communications in written and digital form "were recorded from the moment Plaintiff pressed 'Enter'" and thus, the "tracking technologies are not 'recording' Plaintiff's communications within the ordinary meaning of that term." MTD at 17. Defendant cites no authority for this argument and ignores several cases holding that internet tracking software does, in fact, qualify as an "electronic … **recording** device[s]" under CIPA § 632(a) (emphasis added). *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024); *Rack Room Shoes*,

[1] Likewise, *Campbell v. Facebook*, *Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) and *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018) do not stand for the blanket proposition that private internet communications are not confidential because these cases deal with the lack of expectation of privacy in online email and messaging, given that these types of communications reach other *human recipients* who can easily share communications. Not all online communications carry the same risk/uncertainty. Further, *Campbell* and *Cline* are distinguishable from the present case because there, the recipients of the communications did not make a clear and direct promise not to share the communications. But here, Defendant did, thus creating plaintiff's reasonable expectation of privacy. *See* 77 F. Supp. 3d at 849; 329 F. Supp. 3d at 1051–52; Compl. ¶¶ 3, 9, 12-13, 82-83.

2025 WL 1085169, at *5; *JustM2J LLC v. Brewer*, 2025 WL 3208815, at *17 (E.D. Cal. Nov. 17, 2025).

Defendant's only argument to the contrary posits that, "[b]ecause Plaintiff's communications were already in recorded form when they left her browser, the tracking tools did not (and could not) 'record' them within the meaning of section 632." MTD at 17-18. This fails for at least three obvious reasons. First, Defendant assumes the same communication cannot be recorded multiple times. But this is not how recording works under the ordinary meaning of the term. When a class of students record notes from a teacher's lecture, each set of notes is an independent record, regardless of whether one student recorded theirs faster than other students or whether the professor was reading from his own previously-prepared notes. Indeed, even Defendant's cherry-picked dictionary definition of the word "record" does not contain this limitation.[2]

Second, even if Section 632 incorporated Defendant's assumed limitation, the argument would still fail because the tracking software Defendant implemented recorded much more than simply the searches Plaintiff typed into the search bar. It




[2] Merriam-Webster's Online Dictionary has seven different definitions of the verb "record," (Definitions 1.a (1-2), 1.b, 1.c (1-2), 2, or 3) and Defendant cited the very last one presumably because it believed that came closest to justifying its argument.

also recorded Plaintiff when she clicked the "Reject All" button—an action that was not "pre-recorded." Compl. ¶ 4.

And third, whether a given transmission is the first recording or a subsequent recording made "only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025). Courts have declined to resolve such questions in defendants' favor at the pleading stage. *See id.* (denying motion to dismiss).

#### ***3. Plaintiff Did Not Consent to Defendant's or The Third Parties' Recordings.***

Defendant attempts to avoid liability by arguing that Plaintiff's voluntary communication with Defendant causes her 632 claim to fail. MTD at 18. But Defendant ignores that it can be liable for "recording its own conversation with plaintiff if plaintiff did not consent to the recording." *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 n.4 (N.D. Cal. 2024) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (2006)). Plaintiff never consented. Compl. ¶¶ 9, 12-13, 82. To the contrary, as described throughout the Complaint and in this opposition, Plaintiff explicitly and affirmatively opted out of Defendant's use of the Tracking Code that Defendant then used to record her communications. *Id.*

Further, Defendant is separately derivatively liable for the Third Parties' recording of Plaintiff's communications. "Nothing in the language of CIPA explicitly limits the application of [Penal Code] section 31[,]" regarding derivative liability, to CIPA § 632. *Rack Room Shoes*, 2025 WL 1085169, at *5. Applying Section 31 to § 632 "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). The court in *Rack Room Shoes* explained that the plaintiffs adequately alleged the "[defendant]

knew [the third parties'] data collection had the purpose of tracking individually identifiable user habits" and that by knowingly and affirmatively embedding third parties' tracking codes into its website, the plaintiffs sufficiently plead substantial participation. 2025 WL 1085169, at *5.

The same is true here. Specifically, Plaintiff alleges Defendant enabled the Third Parties' recording of Plaintiff's communications by choosing to "purposefully install[] Google's tracking tools [and the other Third Parties' tools] on its Website" so that the Third Parties can "effectuate targeted advertising related to Plaintiff's and other Website users' actions and communications on the Website" are sufficient at this stage. Compl. ¶¶ 19, 69; *see also id.* ¶¶ 40, 46, 51; s*ee Rack Room Shoes*, 2025 WL 1085169, at *5.

### C. Plaintiff Sufficiently Alleges A Violation Of CIPA § 631(a).

#### *1. Plaintiff Sufficiently Alleges a Violation of Clause Two.*[3]

Defendant argues that Plaintiff does not sufficiently allege that the Third Parties violated Clause Two of CIPA § 631 because she does not "allege[] that the third-party companies 'read[] or attempt[] to read the contents of the communication while they are in transit,'" but instead, that they "analyze the data only after interception and collection by those companies." MTD at 10. Significantly, Defendant does *not* dispute that the Complaint alleges the communications were ***intercepted*** in transit. *See* MTD at 10-11. Rather, Defendant argues Plaintiff fails to state a claim because, in its view, the communications were not ***read or learned*** while in transit. *See id.*

Defendant is wrong. Neither the text of the statute nor the California Supreme Court's interpretation of it have ever imposed such a requirement.

As an initial matter, Defendant's interpretation reads the phrase "attempts to read" out of § 631(a). The relevant passage imposes liability on a person who,

---

[3] Plaintiff's Complaint does not assert a Section 631(a) claim under Clause One, but Clauses Two through Four.

without consent, "[1] reads, or [2] *attempts to read*, or … [3] learn[s] the contents or meaning of any message, report, or communication while the same is in transit." Cal. Penal Code § 631(a) (emphasis added). The phrase "attempts to read" must hold some meaning independent from the words "read[]" or "learn." This is because, in interpreting California statutes, "[w]e … generally avoid a reading that renders any part of a statute superfluous." *People v. Aguilar*, 16 Cal. 4th 1023, 1030 (1997).

Second, the California Supreme Court has never held Section 631(a) requires a defendant to simultaneously read or learn a message in transit. Instead, it has held a defendant violates Section 631(a) when there is a "simultaneous *dissemination* to an unannounced second auditor, *whether that auditor be a person or mechanical device*." *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985) (emphasis added). As such, numerous courts, including this one, have interpreted the provision as being violated, where, as here, Plaintiff "plausibly alleged that her communications were intercepted while 'in transit,'" by alleging that "tracking code … sent a simultaneous transmission of her information to" a third party. *Call-on Doc*, 2025 WL 1677632, at *12 (Curiel, J.); *accord Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (allegations that "Plaintiff's communications were intercepted 'in real time through the use of computer code', … supports the 'in transit' requirement."); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (allegations that software "may simultaneously collect a transcript of that chat … and save it for later access,' … are sufficient to plead the 'in transit' requirement."); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) (same); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854 (C.D. Cal. 2024) (same); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024) (same). Simply put, "[a]llegations of real-time interception are sufficient." *Gianne*, 2026 WL 925522, at *3.

Arguing otherwise, Defendant cites a line of cases that held at summary judgment that internet tracking technologies' interceptions did not satisfy the in

transit requirement because the intercepted transmissions were not instantaneously read or learned, but rather, processed milliseconds later. *See Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025); *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025); *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024).[4] For example, in *Eating Recovery*, the court held there was no in transit reading or learning because "the filtering operation indisputably takes place after the communication has already traveled from the website visitor to the website operator" which itself takes "about 0.2 seconds." 806 F. Supp. 3d at 1117.

But this construction proves too much. Read as Defendant urges, the requirement that a communication be read or understood *during* the instant it is "in transit" would place even the conduct § 631(a) was enacted to prohibit beyond the statute's reach. The paradigm case is the wiretapping of a telephone call as it travels the wire — yet a transmission completes its passage "over any wire, line, or cable," Cal. Penal Code § 631(a), far faster than any eavesdropper, human or mechanical, could read and comprehend its contents in that moment. If "in transit" demanded *contemporaneous comprehension*, the classic telephone wiretap would itself fall outside the statute because the human mind processes text and sounds far slower than an electrical signal can traverse a copper wire. Because the Legislature unmistakably intended § 631(a) to reach that conduct, "in transit" cannot carry the meaning Defendant or this minority of courts assigns it. That is why the California Supreme Court framed the violation as a "simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device," *Ribas*, 38 Cal. 3d at 360, and why a majority of courts, including this one, apply this holding to internet tracking technologies.

[4] Defendant also cites *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025), but in that case, the issue was not that the messages were not read or learned in transit, but that there was no evidence that a third-party "read or attempted to read *her* chat message" at all.

Defendant's reading fails for a third, independent reason. It assumes, without any analysis, that the relevant "communication" is a single data transmission between a browser and a website. While that is certainly one way to frame the relevant "communication," it is not the only way, and far from the best way.

In *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1, the Ninth Circuit framed the relevant communication as the plaintiff's act of "filling out [his] insurance questionnaire online." The Ninth Circuit held that "Section 631(a) applies to Internet communications," and found that the plaintiff stated a claim where the defendant allegedly intercepted the plaintiff's "answer[s] [to] a series of questions about his demographic information and medical history." *Id.* That online questionnaire, however, spanned several webpages, *see Javier*, Case No. 3:20-cv-02860-CRB, ECF No. 1, ¶¶ 32-39 (N.D. Cal. Apr. 24, 2020), and took the plaintiff "3 minutes and 35 seconds" to complete, *id.* at ¶ 32. While the Ninth Circuit did not address the "in transit" language directly, it "emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier*, 2022 WL 1744107, at *2 (citing *Ribas*, 38 Cal. 3d at 358-59 and *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 199 (2021)).

The Ninth Circuit's broader framing of "communication" in *Javier* finds support in the pluralistic text of Section 631(a). Clause Two of Section 631(a) asks whether a defendant tries to read or learn the "*contents* [plural]… of *any* … *communication*" while it is "in transit." Communication, in turn, is defined as "[t]he interchange of *messages* [plural] by speech, writing, gestures, or conduct." *Communication*, Black's Law Dictionary, def. 1(a) (12th Ed. 2024) (emphasis added); *see also id.*, at def. 2 ("The *messages* [plural] or *ideas* [plural] so expressed or exchanged."). So, when a person communicates with a website online, this encompasses all the "messages or ideas so expressed and exchanged," while a person is interacting with the website. And as noted, the text of the statute covers "*any*…

communication," CIPA § 631(a) (emphasis added), not simply the most narrowly defined communication.

If a user visits a website for "3 minutes and 35 seconds," *Javier*, Case No. 3:20-cv-02860-CRB, ECF No. 1, ¶ 32 (N.D. Cal. Apr. 24, 2020), and "answer[s] a series of questions about his demographic information and medical history," *Javier*, 2022 WL 1744107, at *1, then that entire process is the relevant Section 631(a) communication. Taken together, this communication would "divulge a user's personal *interests* [plural], *queries* [plural], and *habits* [plural]." *In re Facebook Tracking*, 956 F.3d at 605 (emphasis added). The same is true here. When users visit the Website, they do not stay on a single webpage. Rather, they interact with Defendant's CCPA cookie banner (Compl. ¶¶ 9, 81), they search for items via the website's search bar, they browse the Website (*id.* ¶ 10), and they make purchases on the Website (*id.* ¶ 75). That entire process is the relevant "communication" and Defendant violates section 631(a) if, at any point, during that relevant session, it enables the Third Parties to "read[], or attempt[] to read, or to learn the contents or meaning … of any … communication while the same is in transit."

Lastly, even assuming Section 631(a) did require contemporaneous comprehension, dismissal would still be improper here. As Defendant's cases "illustrate[], … whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work." *Riganian*, 791 F. Supp. 3d at 1092. However, courts have found such arguments premature at the motion to dismiss stage as no discovery has yet taken place. *See id.* Indeed, the very same tracker can be configured in different ways on different websites, leading to different conclusions at summary judgment.[5]

[5] *Compare Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (denying summary judgment on the issue of "whether Meta's interception occurred while the communications were 'in transit,'") *with Eating Recovery*, 806 F. Supp. 3d at 1117 (granting summary judgment on the same issue on another website that used Meta's same pixel technology).

But no such discovery has taken place here. And nothing on the face of the Complaint conclusively establishes *when* the Third Parties read or learned, or attempted to read or learn, the contents of Plaintiff and Class Members' communications. Thus, reliance on these summary judgment-stage cases is inappropriate at this juncture.

Defendant's reliance on non-summary judgment cases, like *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7-8 (N.D. Cal. Mar. 28, 2025)[6], *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023), *Sisti v. Bosley Inc.*, --- F.Supp.3d ----, 2026 WL 1223927, at *5-6 (C.D. Cal. Apr. 27, 2026); and *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022), fares no better.[7] Unlike those cases, Plaintiff does more than state a bare recitation of the pleading requirement. *See* Compl. ¶¶ 24-27, 43-45, 58-60. Instead, she details the process and timing of the interceptions. *See id.* For example, when discussing the Meta Pixel, Plaintiff alleges: "This secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the Meta Pixel is configured to collect. This transmission is initiated by Meta code and concurrent with the communications with the host website." *Id.* ¶ 59.

[6] Defendant argues *R.C.* is "particularly instructive", MTD at 10, but Defendant is wrong. First, *R.C.* contradicts the majority view that simultaneous dissemination is enough for the in transit requirement at this stage. *See Call-on Doc*, 2025 WL 1677632, at *12 (Curiel, J.); *Mata*, 2024 WL 5161955, at *6; *Esparza*, 2024 WL 559241, at *3; *D'Angelo*, 2023 WL 7006793, at *8; *Heerde*, 741 F. Supp. 3d at 854; *Gray*, 2024 WL 5689566, at *7; *Gianne*, 2026 WL 925522, at *3. Second, the *R.C.* Second Amended Complaint ¶¶ 42-43, 60-61, ECF No. 36, does not include detailed allegations on how interceptions occur. Plaintiff's allegations here are much more detailed, Compl. ¶¶ 24-27, 43-45, 58-60, and akin to those found sufficient in cases like *Gray*, 2024 WL 5689566, at *7.

[7] Defendant's reliance on *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021) is also misplaced because there, the complaint omitted any allegation that the communications were intercepted in transit, and instead specifically alleged the "text ends up in the Pasteboard because the user copies it from another application" and thus, that the defendant only accessed communications that were "previously-sent or previously-received." By contrast, Plaintiff includes allegations that the interception occurred while communications were in transit. *See* Compl. ¶¶ 24-27, 43-45, 58-60.

Plaintiff's allegations are like those in *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *7 (distinguishing *Rodriguez*, 2022 WL 214552) (citing the *Gray* complaint ¶ 27): "Facebook's code 'directs the user's browser to contemporaneously send a separate message to Facebook's servers ... contain[ing] the original GET request sent to the host website, along with additional data that the [Meta] Pixel is configured to collect.'" In *Gray*, the court found that these allegations, which mirror Plaintiff's allegations here, provided "specific facts about when the purported interception occurred and how the transmission occurred contemporaneously, not after-the-fact." *Id.* The court further found that "a plaintiff 'need not prove their theory of interception,' but rather 'must provide fair notice to [d]efendants'" meaning the plaintiff "met this threshold requirement." *Id.* (citing *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017)).

In sum, at the motion to dismiss stage, Plaintiff has met her burden to plausibly allege the "in transit" requirement.

***2. Plaintiff Sufficiently Alleges a Violation of Clause Three.***

Defendant argues that because a violation of Clause Three is "contingent upon a finding of a violation of the first or second clause of § 631(a) … Plaintiff has not sufficiently alleged a violation of the first two clauses, her claim for violations of § 631(a) under the third clause necessarily fail as well." MTD at 11 (cleaned up). For the reasons stated above, Plaintiff has sufficiently alleged a Clause Two violation, and thus, has also sufficiently alleged a Clause Three violation.

***3. Plaintiff Sufficiently Alleges a Violation of Clause Four.***

Defendant argues that Clause Four of CIPA § 631 is interpreted as "requiring that the defendant *knowingly* and *intentionally* aid[] the third party in violating the statute" and that "Plaintiff does not allege that Lulu & Georgia knowingly and intentionally aided any of the third-party companies in violating section 631(a)." MTD at 11-12. Defendant's argument fails because "[t]he statute as worded does not include an intent standard." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL

4369675, at *7 (N.D. Cal. Oct. 1, 2024). Simply put, asking Plaintiff to plead that Defendant "kn[e]w that [the third-party] was allegedly violating section 631(a) … goes beyond what the statute requires." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025).

As the court in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) explained, Clause Four "imposes liability on anyone who 'aids, agrees with, employs, or conspires with' someone who violates the previous three clauses of California Penal Code § 631(a)" and the "contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause." So CIPA's text does not impose a heightened "aiding and abetting" standard requiring knowledge and purpose. *Id.* More recent cases "find[] the approach in *Cousin* more persuasive because it more closely follows the language of the statute." *St. Aubin*, 2024 WL 4369675, at *8; *Tate*, 762 F. Supp. 3d at 959; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025); *Casillas v. Six Flags Ent. Corp.*, 2025 WL 3684543, at *7 n.8 (C.D. Cal. Dec. 15, 2025).

Thus, Plaintiff's allegations that "Defendant has purposefully installed Google's tracking tools [and the other Third Parties' tools] on its Website" so that the Third Parties can "effectuate targeted advertising related to Plaintiff's and other Website users' actions and communications on the Website" are sufficient at this stage. Compl. ¶¶ 19, 69; *see also id* ¶¶ 40, 46, 51; *see, e.g.*, *Tenet*, 789 F. Supp. 3d at 839 (finding allegations that "Defendants chose to install Meta Pixel on their Web Properties and by installing Meta Pixel, Defendants assisted Meta with intercepting the PHI and PII of Defendants' patients without their authorization" sufficient at the motion to dismiss stage); *Cousin*, 681 F. Supp. 3d at 1130 (finding the plaintiffs' allegations that "Sharp intentionally procured Meta Pixel from Meta and installed it on their website … sufficient to plead that Sharp either aided, agreed, employed, or

conspired with Meta in the alleged interception of their information and data without their consent.”).[8]

That said, even if Plaintiff was required to allege “knowledge” or “purpose” (which she is not), her Complaint satisfies even that heightened standard. Plaintiff alleges: **(1)** Defendant “purposefully installed” the Tracking Code on the Website (Compl. ¶¶ 19, 40, 51); **(2)** Defendant did so for the purpose of effectuating its “targeted advertising related to Plaintiff’s and other Website users’ actions and communications on the Website,” in other words, to increase profits (*id.* ¶ 69); and **(3)** Defendant knew the Third Parties’ Tracking Code would intercept, analyze, and use consumers’ communications because the Third Parties’ services are based on the Third Parties’ collection and analysis of consumer data to deliver targeted advertisements for their customers, such as Defendant (*id.* ¶¶ 29, 45, 48, 50, 53, 55, 64).

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942-43 (N.D. Cal. 2024) is inapposite. There, Judge Rita Lin held the plaintiff failed to plead the website owner knew it was “acting with the third party in order to have the third party perform acts that violate the statute,” because “it only intended to enable the third party to process payments made on its Website.” *Id.* at 942. However, the website owner did not know the third-party subsequently “then markets [customer’s financial information] to merchants without customers’ consent.” *Id.* at 938. But here, the whole point of the Third Parties’ services is to analyze the user’s actions on websites so Defendant and other companies can later retarget that user with advertisements for similar products. Compl. ¶¶ 29, 45, 48, 50, 53, 55, 64.

Judge Lin’s subsequent decision in *Rack Room Shoes*, 2025 WL 1085169, at *1, illustrates the difference. There, the court held “plaintiffs have adequately alleged

[8] Unlike *Esparza*, 2024 WL 559241, at *6 and *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (MTD at 12), Plaintiff here ***does*** provide various cases supporting her position regarding what the scienter requirement is.

intent" because they said the website owners "affirmatively embedded" tracking code on its website and "the purpose of [tracking] code is to 'track[ ] the people and type of actions they take' and provide 'a treasure trove of insights about [ ] customers' shopping habits, like their browsing and purchasing history.'" *Id.* at *4. "Therefore, it is plausible to infer from [the website owner's] alleged affirmative act of integrating the third-party code into its website that it knew [the third parties] would intercept personally identifiable information and that [the website owner] had the purpose of employing [the third parties] to do so." *Id.*

Again, the same is true here. Plaintiff alleges the Third Parties analyze user's actions on websites so Defendant and other companies can perform targeted advertising. Compl. ¶¶ 29, 45, 48, 50, 53, 55, 64. As such, the allegations here are more like *Rack Room Shoes* (where intent was sufficiently alleged), than *YETI Coolers* (where it was not). [9]

## III. CONCLUSION

For these reasons, the Court should deny Defendant's Motion in its entirety.

Dated: June 8, 2026

**BURSOR & FISHER, P.A.**

By: /s/ *Stefan Bogdanovich*
Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com
idiaz@bursor.com

[9] Unlike *Valenzuela v. Kroger Co.*, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025), Plaintiff cites cases that assess the "sufficiency of similar allegations of aiding and abetting."

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

*Attorneys for Plaintiff*