SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
JAY T. RAMSEY, Cal Bar No. 273160
KEVIN MURPHY, Cal Bar No. 346041
RANA SALEM, Cal Bar No. 358050
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701
Email: ccardon@sheppard.com
jramsey@sheppard.com
kemurphy@sheppard.com
rsalem@sheppard.com

*Attorneys for Defendant*
Lulu & Georgia, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CORREIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LULU & GEORGIA, INC.,<br><br>Defendant. | Case No. 3:26-CV-01186-GPC-JLB<br><br>*Hon. Gonzalo P. Curiel*<br><br>**DEFENDANT LULU & GEORGIA, INC.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Hearing Date: July 24, 2026<br>Time: 1:30 p.m.<br>Courtroom: 12A/12th Floor<br><br>Complaint Filed: February 24, 2026<br>Trial Date: Not Set |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. THE COURT SHOULD DISMISS THE COMPLAINT ........ 1

A. Plaintiff Lacks Standing To Pursue Her Section 631(a) Claim ........ 1

B. Plaintiff Also Fails To State A Claim For Violation Of Section 631(a) ........ 4

1. Plaintiff fails to allege that the third-party companies violated section 631(a)'s second clause ........ 5

2. Plaintiff fails to allege that the third-party companies violated section 631(a)'s third clause ........ 7

3. Plaintiff fails to allege that Lulu & Georgia aided and abetted ........ 7

C. Plaintiff Also Fails To State A Section 632(a) Violation ........ 8

1. Plaintiff fails to plausibly allege that her communications with the Website were confidential ........ 9

2. The section 632(a) claim fails for additional reasons ........ 9

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.S. v. SelectQuote Ins. Servs.*
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 8

*Aquino-Roraldo v. Med. Mgmt. Int'l, Inc.*
2026 WL 1092905 (D. Or. Feb. 13, 2026) ........ 4

*Briskin v. Shopify, Inc.*
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ........ 6

*Brown v. Google, LLC*
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 8

*Camplisson v. Adidas Am., Inc.*
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 3

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 7

*D'Antonio v. Smith & Wesson Inc.*
820 F. Supp. 3d 928 (N.D. Cal. 2026) ........ 4

*DellaSala v. Samba TV, Inc.*
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ........ 6

*Doe v. Call-On DOC, Inc.*
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 6

*Doe v. Eating Recovery Ctr. LLC*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 5, 6, 7

*Esparza v. UAG Escondido A1 Inc.*
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 5, 8

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ........ 2, 3

*Gabrielli v. Haleon US Inc.*
815 F. Supp. 3d 852 (N.D. Cal. Aug. 29, 2025) ........ 4

*Garcia v. Blackhawk Network, Inc.*
2026 WL 925028 (C.D. Cal. Apr. 1, 2026)....................3, 4

*Garcia v. Truist Fin. Corp.*
--- F. Supp. 3d ----, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) ...............2, 3, 4

*Gianne v. Accor Mgmt. US Inc.*
2026 WL 925522 (C.D. Cal. Mar. 31, 2026) ....................6

*Gutierrez v. Converse Inc.*
2024 WL 3511648 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025)....................6

*Heerde v. Learfield Commc'ns, LLC*
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................5

*Heiting v. Taro Pharms. U.S., Inc.*
709 F. Supp. 3d 1007 (C.D. Cal. 2023)....................7, 8

*Javier v. Assurance IQ, LLC*
2022 WL 174107 (9th Cir. May 31, 2022)....................7

*Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*
313 F. App'x 51 (9th Cir. 2009)....................10

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025)....................1, 2, 3, 4

*Riganian v. LiveRamp Holdings, Inc.*
791 F. Supp. 3d 1075 (N.D. Cal. 2025)....................10

*Rodriguez v. Ford Motor Co.*
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ....................8

*Semien v. PubMatic Inc.*
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ....................2

*Shah v. MyFitnessPal, Inc.*
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................4

*Smith v. Google, LLC*
735 F. Supp. 3d 1188 (N.D. Cal. 2024)....................8

*Smith v. Rack Room Shoes*
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)....................9

*Smith v. Yeti Coolers, LLC*
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) .......... 8

*St. Aubin v. Carbon Health Techs., Inc.*
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 7

*Swarts v. Home Depot, Inc.*
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 7

*Torres v. Prudential Financial, Inc.*
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 6

*Wiley v. Universal Music Grp.*
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 4, 9

<u>Statutes</u>

Cal. Penal Code § 631(a) .......... 1, 4, 5, 6, 7, 8

Cal. Penal Code § 632(a) .......... 1, 6, 8, 9, 10

<u>Other Authorities</u>

U.S. Const. art. III, § 2 .......... 1, 4

# I. INTRODUCTION

Plaintiff, apparently a litigation tester, visited Lulu & Georgia's website, clicked "Reject All" on a cookie banner, typed "rugs" into a search bar, not surprisingly browsed a few rugs, added items to her cart and then abandoned them, never making a purchase. She alleges that tracking technologies on the Website caused a URL, including the search term "rugs," to be transmitted to third-party servers. On that basis, she brings claims under CIPA sections 631(a) and 632.

Neither claim has merit. Plaintiff lacks Article III standing because searches for "rugs" on a retail website that sells rugs, and browsing for rugs on that website, are not sensitive personal information, the disclosure of which is actionable at common law. Her claims also fail on the merits. For Section 631, she does not allege that any third party read (or even attempted to read) her "communications" while they were in transit, nor that Lulu & Georgia knowingly and intentionally aided anyone's violation. Her section 632 claim, brought under what is known as the "call recording" statute, fares no better. Her communications are not confidential, and they were not "recorded" within the meaning of the statute. The Court should dismiss the Complaint without leave to amend.

# II. THE COURT SHOULD DISMISS THE COMPLAINT

## A. Plaintiff Lacks Standing To Pursue Her Section 631(a) Claim

Article III standing requires that Plaintiff demonstrate a concrete injury, which exists only if the harm experienced by plaintiff is one traditionally actionable in our nation's legal system—a determination made by comparing the *specific* harm alleged by plaintiff to a *specific* common-law tort. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025). While "an 'exact duplicate' is not required, … many courts require a match only in the kind of harm and not the degree." *Id.* at 791. Even so, this standard does not eliminate the requirement common to privacy torts like invasion of privacy or intrusion upon seclusion: the alleged harm must also be "highly offensive" to a reasonable person. *Id.* Plaintiff's allegations do not come close.

Whether an alleged privacy violation clears this bar depends on the nature and sensitivity of the information involved. In *Popa*, the Ninth Circuit held that allegations of gathering "pet-store preferences and her street name" did not constitute a concrete injury because she "identifie[d] no embarrassing, invasive, or otherwise private information" collected.[1] *Id.* at 791. By contrast, courts have found standing where tracking involves genuinely sensitive personal information—such as browsing histories correlated with health status, political affiliation, religious affiliations, employment history, housing, or citizenship status—used to build "cradle-to-grave" profiles. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026); *Garcia v. Truist Fin. Corp.*, --- F. Supp. 3d ----, 2026 WL 972328, at *5 (C.D. Cal. Mar. 25, 2026).

Plaintiff's allegations are like those in *Popa*, not like those in *In re Facebook*, *Semien*, or *Truist*. She visited a single retail home décor website, where the information allegedly collected consisted of her search for "rugs," the product listings she viewed, and the items she added to her cart. (Compl. ¶¶ 10-11.) Notwithstanding labeling this information "personal" (*id.* ¶ 77), it certainly is not. The names of products searched for, viewed, and added to a shopping cart do not identify Plaintiff, reveal anything about her background, health, finances, beliefs, or associations, or disclose anything a reasonable person would regard as private. Attaching the label "personal" to mundane commercial browsing data does not transform it into the kind of sensitive information whose disclosure was historically actionable at common law. As the Ninth Circuit observed in *Popa*, "the monitoring of [Plaintiff]'s interactions

---

[1] In *Popa*, the court held that identifying *potential* harms is insufficient, rather a plaintiff must plausibly link those harms to the specific trackers at issue vis-à-vis the plaintiff. 153 F.4th at 791 n.5. Plaintiff here falls short. While the Complaint details the "capabilit[ies]" of the identified trackers (*see* Compl. ¶¶ 39, 50, 64), it at times fails to link them to any harm Plaintiff actually experienced. Allegations about what a tracker *could* do, untethered to actual harm, do not demonstrate standing.

with [Defendant]'s website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular," which is not the kind of intrusion historically actionable at common law. 153 F.4th at 791.

Plaintiff's reliance on this Court's decision in *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025), does not compel a different result. *Camplisson* distinguished *Popa* on the ground that *Popa* involved information about "how the plaintiff interacted with the site rather than her personal, private information," and so the "nature" of the information collected did not fall within the traditional privacy harms at common law. 809 F. Supp. 3d at 1105-06. Standing was found in *Camplisson* because the trackers collected a broad set of personal identifying and addressing information like name, date of birth, and address. *Id.* at 1100-06. Search queries for "rugs," product listings viewed, and items added to a cart are not that.

Further, Plaintiff does not allege that any of this information was "embarrassing, invasive, or otherwise private" or that its collection or disclosure was "highly offensive." *Popa*, 153 F.4th at 791. Nor does she allege that Lulu & Georgia, specifically, was amassing "profiles" about her or collecting and correlating data across other websites in the manner found sufficient in *In re Facebook*. Merely informing a third party about a plaintiff's website interactions is "not sufficient to show that Defendant caused any injury Plaintiff may have suffered as a result of visitor data aggregated by those third parties." *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (citation omitted).

*Garcia* is instructive. There, the plaintiff alleged that a website owner told users their data would not be shared with third parties if they rejected cookies by selecting a "Required only" button on a cookie banner. *Id.* at *1. Instead, defendant enabled third-party tracking of browsing history, website interactions, user input data, demographic information, referring URL, etc. *Id.* The court held that plaintiff failed to allege that "the actual intrusion" was "highly offensive to the reasonable person" regardless of "whether Plaintiff had 'an objectively reasonable expectation of

seclusion or privacy in … the data'" or not. *Id.* at *5 (citation omitted).

Plaintiff mischaracterizes *Garcia* as "conceding" that other courts have found a cookie banner misrepresentation alone sufficient. (Opp. at 3.) To the contrary, *Garcia **expressly rejected*** those cases, *including Wiley v. Universal Music Grp.*, 2025 WL 3654085, at *6 (N.D. Cal. Dec. 17, 2025) *and Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026), because the court did "not find the[ir] reasoning persuasive." 2026 WL 925028, at *5. This Court should do the same. The remaining cases Plaintiff cites are wholly distinguishable or otherwise irrelevant.[2]

Plaintiff's cookie banner allegations do not change this analysis. That Lulu & Georgia's banner displayed the phrase "We value your privacy" and offered a "Reject All" option speaks at most to Plaintiff's expectation that tracking would not occur, but as in *Garcia*, that "goes only to the first element," and cannot carry the full weight of the standing analysis. 2026 WL 925028, at *5. Plaintiff's search for "rugs" and browsing activity "do[] not explain how the tracking of her interactions with the [Website] caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791. Plaintiff, therefore, lacks Article III standing.

### B. <u>Plaintiff Also Fails To State A Claim For Violation Of Section 631(a)</u>

As set forth in the Motion, Plaintiff's section 631(a) claim also fails: (1) she fails to allege that the third-party companies read or attempted to read her communications while in transit; (2) she fails to allege a violation of section 631(a)'s third clause; and (3) she fails to allege that Lulu & Georgia aided and abetted any

---

[2] *See Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. Aug. 29, 2025) (noting that inputs on healthcare website are more sensitive than those on the pet food website in Popa); *Aquino-Roraldo v. Med. Mgmt. Int'l, Inc.*, 2026 WL 1092905, at *6, *8 (D. Or. Feb. 13, 2026) (recommending dismissal for lack of standing because information about pets is not "the type of sensitive information the disclosure of which would be 'highly offensive' to a reasonable person"); *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) (no Article III standing analysis).

violation. A ruling for Lulu & Georgia on any one of these issues warrants dismissal.

Additionally, the Court must construe CIPA narrowly and, if it finds the statute ambiguous, in Lulu & Georgia's favor. CIPA is a penal statute, and under California law, penal statutes must be strictly construed; the rule of lenity requires that ambiguous criminal statutes, even when invoked in a civil claim, be construed in the defendant's favor. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (observing that "CIPA is a total mess" and that "courts should generally resolve CIPA's many ambiguities in favor of [a] narrower interpretation").

#### ***1. Plaintiff fails to allege that the third-party companies violated section 631(a)'s second clause***

Plaintiff's claim under section 631(a)'s second clause fails because she has not alleged that any third-party company read or attempted to read her communications while they were in transit. The Complaint alleges that the third-party companies analyze data ***after*** interception and collection. (Compl. ¶¶ 29, 38, 45, 47, 60, 63.)

As a threshold matter, Plaintiff attempts to do away with the read or attempt to read requirement by arguing that "the California Supreme Court has never held section 631(a) requires a defendant to simultaneously read or learn a message in transit" and that "[i]nstead, it has held a defendant violates section 631(a) when there is a "simultaneous *dissemination* to an unannounced second auditor, *whether that auditor be a person or mechanical device*." (Opp. at 12-13.) This argument goes against the weight of authority in this Circuit and fails for several reasons.

***First***, *Eating Recovery Center LLC* already grappled with this issue. The court acknowledged the split of authority on how the transit requirement applies to instantaneous internet communications. 806 F. Supp. 3d at 1116. The court surveyed both approaches—(1) that simultaneous interception alone suffices[3], and (2) that a

---

[3] *see, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854 (C.D. Cal. 2024); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)

third party must also read or attempt to read the communication while in transit.[4] The court adopted the second approach, reasoning that without requiring something more than mere interception, section 632 would be rendered superfluous. *Id.* at 1118-19. All but two of the cases that Plaintiff cites pre-date *Torres* and *Eating Recovery Center LLC*, and the post-*Torres* cases are readily distinguishable.[5]

***Second***, as set forth in the Motion, numerous courts have held that to adequately plead a claim under section 631(a)'s second clause, a plaintiff must allege that a third party read or attempted to read the communication while in transit (*see* Mot. at 9-10 (citing cases).) That Lulu & Georgia relied on summary judgment cases is inconsequential; those cases confirm that a failure to prove or allege this requirement is fatal. Plus, courts have granted motions to dismiss for the very same reason. *See DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026) (dismissing section 631(a) claim where plaintiffs alleged defendant "processes the data once it is on its servers"); *Briskin v. Shopify, Inc.*, 2026 WL 161441, at *7 (N.D. Cal. Jan. 21, 2026) (same where plaintiffs alleged "that the relevant data is ... only read/analyzed after it has been received by Shopify [servers]").

***Third***, Plaintiff concedes that "nothing on the face of the Complaint conclusively establishes *when* the Third Parties read or learned, or attempted to read or learn, the contents of Plaintiff and Class Members' communications." (Opp. at 16:1:4.) That concession is dispositive because it confirms that Plaintiff has not alleged that third-party companies "read, attempt[ed] to read, or attempt[ed] to learn the contents of [Plaintiff]'s communications with [Lulu & Georgia] while those

---

[4] *see, e.g.*, *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025); *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *6 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025)

[5] *See Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *11-12 (S.D. Cal. June 13, 2025) (dismissing second clause claim under the party exception rule without analyzing whether the read requirement was met); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *3 (C.D. Cal. Mar. 31, 2026) (denying motion to dismiss section 631(a) claim without addressing read requirement).

communications were in transit." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1119.

***Fourth***, Plaintiff's argument that the relevant "communication" should encompass the entire browsing session rather than individual data transmissions does not help her. (Opp. at 14-15.) As Plaintiff concedes, *Javier v. Assurance IQ, LLC*, 2022 WL 174107 (9th Cir. May 31, 2022), "does not address the 'in transit' language directly." (Opp. at 14.) And regardless of how the "communication" is defined, Plaintiff does not allege that any third party read or attempted to read a communication while it was in transit.

***2. Plaintiff fails to allege that the third-party companies violated section 631(a)'s third clause***

"A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023). Because Plaintiff has not sufficiently alleged a violation of the first two clauses, her "claim for violations of § 631(a) under the third clause necessarily fail as well." *Id.*

***3. Plaintiff fails to allege that Lulu & Georgia aided and abetted***

Plaintiff has not plausibly alleged a violation of CIPA's fourth clause, which makes liable any party that "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in CIPA's first three clauses. As set forth in the Motion, the defendant must (1) know that the third party read a plaintiff's communications while in transit; and (2) intentionally assist the third party in doing so. *Heiting v. Taro Pharms. U.S., Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023).[6]

---

[6] Plaintiff relies on *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024), and *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023), to argue the fourth clause imposes no intent standard. But *St. Aubin* itself acknowledged that some courts construe section 631 claims using the common law aiding and abetting tort definition, and the knowledge and intent standard from

Plaintiff's claim under the fourth clause fails for two independent reasons. First, because Plaintiff has not plausibly alleged a violation of the second or third clauses, she cannot plausibly allege that Lulu & Georgia aided or abetted such a violation. *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024). Second, Plaintiff does not allege that Lulu & Georgia had the requisite knowledge and intent. Knowledge that tracking technologies serve advertising purposes is not the same as knowledge that those technologies unlawfully intercepted communications in violation of section 631(a). *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (dismissing where defendant deliberately embedded third-party code and knew the third party captured visitors' communications); *Smith v. Yeti Coolers, LLC*, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025). The Complaint contains no allegations plausibly establishing that Lulu & Georgia knew the third parties were unlawfully reading Plaintiff's communications while in transit and intentionally assisted them in doing so. As such, the CIPA Clause Four claim should be dismissed with prejudice.

### C. <u>Plaintiff Also Fails To State A Section 632(a) Violation</u>

Plaintiff's section 632 claim fails because her communications are not "confidential" within the meaning of the statute. As set forth in the Motion, many federal courts have held that commercial internet-based communications are presumptively not confidential under section 632. (Mot. at 14-16 (citing cases).) Plaintiff does not address those decisions, relying instead on *Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) and *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024)—but even those courts distinguished their cases because the information at issue was different from ordinary commercial browsing activity.

---

those cases remains good law. *See Heiting*, 709 F. Supp. 3d at 1019; *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024); *Esparza*, 2024 WL 559241, at *6. Lulu & Georgia submits that the knowledge and intent standard is more appropriate here.

### ***1. Plaintiff fails to plausibly allege that her communications with the Website were confidential***

Plaintiff has not alleged that her communications were "confidential." Plaintiff focuses exclusively on the circumstances—that she clicked "Reject All" on the cookie banner—without alleging that a reasonable person would not expect general website browsing to be overheard. She searched for "rugs," browsed product listings, and added items to her cart. No reasonable person would expect that activity to be confidential, regardless of what a cookie banner says. The cookie banner does not change the nature of the information. Indeed, it is no different than entering a brick-and-mortar store and browsing the aisles; no person would reasonably expect that such activity would be "confidential" and not seen by third-persons. *Smith v. Rack Room Shoes*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025), does not compel a different result. There, confidentiality was adequately alleged because plaintiffs alleged a reasonable expectation of privacy in their "*personally identifiable* browsing history," *i.e.*, browsing and purchase activity ***bundled*** with personal information like phone numbers could be construed as confidential. *Id.* at *4.

Here, there is no such bundling to make non-confidential information confidential; the only information at issue is the browsing activity itself, and Plaintiff does not allege that any personal information was bundled with it. General allegations that third parties can "personally identify" users via cookies and browser fingerprinting are not enough. *See* e.g. *Wiley*, 2025 WL 3654085, at *7, *9 (dismissing CIPA wiretapping and pen register claims because allegation of general technological capabilities is insufficient absent allegation of actual use).

### ***2. The section 632(a) claim fails for additional reasons***

The tracking technologies did not "record" Plaintiff's communications because they were already in recorded, written, digital form when they left her browser. (Mot. at 17-18.) None of Plaintiff's three responses is persuasive.

***First***, Plaintiff analogizes to students recording notes from a lecture. (Opp. at

9.) But the analogy proves Defendant's point: a lecture is a transient, spoken communication that will be lost unless recorded. Plaintiff's search for "rugs" was transmitted in written, digital form and was not transient. Put another way—by writing her communication, Plaintiff made the recording herself, and then transmitted it to Lulu & Georgia. If Plaintiff emailed Lulu & Georgia asking for rug samples, Lulu & Georgia could forward that email to a vendor—and no one would contend that the vendor "recorded" Plaintiff's communication merely by receiving it. So too here: receiving and retaining a written digital communication is not "recording" within the meaning of section 632, and holding otherwise would mean that every recipient of every email, text message, or web form submission "records" the communication.

***Second***, Plaintiff argues that the tracking software also recorded her click of the "Reject All" button. (Opp. at 9-10.) But a button click is itself an electronic input transmitted in digital form, no different from any other interaction with the Website. Its connection to privacy preferences does not transform it into a transient communication that requires "recording" to preserve.

***Third***, Plaintiff argues this is a "fact-intensive question" that cannot be resolved at the pleading stage, citing *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025). (Opp. at 10.) But *Riganian* does not address a section 632 claim and is inapposite. Plaintiff's own allegations confirm her communications were transmitted in written, digital form, rendering the determination of whether retaining a digital copy is a "recording" under section 632 a legal question ripe on a motion to dismiss. Because no "recording" occurred, Plaintiff's consent argument (Opp. at 10-11) fails at the outset. [7]

For the same reasons discussed in Section II.B.3, Lulu & Georgia is not derivatively liable under section 632 for the third parties' alleged recordings.

---

[7] Plaintiff failed to address Lulu & Georgia's argument that the tracking technologies are "amplifying" devices (*see* Mot. at 17), and the point is therefore waived. *See Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009).

Dated: June 22, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *P. Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
KEVIN MURPHY
RANA SALEM

*Attorneys for Defendant*
Lulu & Georgia, Inc.