UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CORREIA, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>LULU & GEORGIA, INC.,<br>Defendant. | Case No.: 3:26-cv-01186-GPC-JLB<br>**ORDER DENYING MOTION TO DISMISS**<br>**[ECF No. 8]** |

On May 11, 2026, Defendants filed a Motion to Dismiss. ECF No. 8. The motion has been fully briefed. ECF Nos. 10, 11. For the reasons below, the Court DENIES Defendant's motion to dismiss.

**FACTUAL BACKGROUND**

Lulu & Georgia, Inc. ("Defendant") is an interior home décor company that operates a website for their products. ECF No. 1 ("Compl.") ¶ 2. Customers can view and buy items from Defendant on that website. *Id*. As part of its website, Defendant has installed tracking tools and cookies from Google, Hubspot, and Meta ("Trackers"), which

collect and intercept customers' communications with Defendant. *Id*. The Trackers are also able to personally identify users via browser fingerprinting. *Id*. ¶ 69.

Each of the Trackers has different tracking capabilities. Google's software collects information on how website users interact with a business's website, including when and what items were bought. *Id*. ¶ 21. The software also tracks electronic communications within a website's features, like words and phrases used in search bars. *Id*. ¶ 24. Essentially, when an individual makes a search on Defendant's website, Google duplicates the communication with Defendant, "transmitting it to Google's servers, alongside additional information that transcribes the communication's content and individual's identity." *Id*. ¶ 26. This happens concurrently with a user's activity, "enabling Google to intercept sensitive data as it is generated." *Id*. In addition, Google places the _ga cookie on a user's browser, which allows Google and Defendant to distinguish unique users via browser fingerprinting. *Id*. ¶¶ 30-32. The fingerprinting allows a variety of data to be collected, including a user's web browser, installed languages, operating system, plugins, time zone, and more. *Id*. ¶ 33. After collecting all this data, Google then views the intercepted communications. *Id*. ¶¶ 27, 38.

HubSpot employes a similar tracking code via Defendant's website. This code records information about a website user's visit, including page views, data entered into website forms, IP addresses, and other online identifiers. *Id*. ¶ 41. HubSpot also associates an individual based on their browser or email addresses provided to the website. *Id*. ¶ 42. Like Google, HubSpot duplicates the communications with Defendant, which is then transmitted to HubSpot's servers concurrently with a user's activity. *Id*. ¶ 44.

Lastly, Meta utilizes the Meta Pixel on Defendant's website. Meta Pixel tracks a user and the actions that user takes on a website. *Id*. ¶ 58. It also allows Meta to intercept a user's personally identifiable information, including their Facebook ID ("FID"). *Id*. ¶

60. Similar to the other trackers above, MetaPixel "directs the user's browser to contemporaneously send a separate message to Meta's servers," which is analyzed by Meta before being provided to any entity that was a party to the conversation. *Id*. ¶¶ 59, 63.

While it has the Trackers on its website, Defendant also displays a cookie banner titled "We value your privacy." *Id*. ¶ 80. In smaller print, the banner notifies a user that the website uses cookies and tracking technologies and that a user can manage privacy preferences via the "Cookie Settings" button. *Id*. If "Cookie Settings" is clicked, a user can explicitly reject Defendant's use of optional targeting technologies. *Id*. ¶ 82.

Plaintiff visited Defendant's website between December 11, 2025 and December 26, 2025. *Id*. ¶ 8. Upon entering the website, Plaintiff saw the Defendant's pop-up privacy banner informing Plaintiff that the website used cookies and other tracking technologies. *Id*. ¶ 9. Plaintiff clicked "Cookie Settings" and rejected the optional tracking cookies. *Id*. Plaintiff, then, continued to browse the website, viewing rug listings and conducting a search for "rugs." *Id*. ¶ 10. Plaintiff alleges that all communications with Defendant, including search terms, products viewed, and items added to her cart, were intercepted in transit by the third-party companies via the Trackers. *Id*. ¶ 11. Because Defendant integrated the Trackers into its website, Defendant has allegedly "enabled the Third Parties to intercept [Plaintiff's and Class Members'] communications with Defendant as users search and browse for products without users' consent." *Id*. ¶¶ 69, 78.

## PROCEDURAL HISTORY

On February 24, 2026, Plaintiffs Elizabeth Correia ("Plaintiff") filed a class action complaint against Defendant for allegedly violating the California Invasion of Privacy Act ("CIPA") §§ 631, 632 by recording individual users' website communications without user consent. ECF No. 1. Defendant moves to dismiss the complaint for lacking

Article III standing and for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8 ("Mot.") at 13-27.[1] The motion has been fully briefed. ECF Nos. 10, 11.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits challenges to a court's subject matter jurisdiction and includes a challenge for lack of Article III standing. *See Chandler v. State Farm Mut. Auto. Inc. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that a plaintiff show that he has (1) "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent" (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). The plaintiff has the burden to allege Article III standing. *See Lujan*, 504 U.S. at 561.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (citation omitted); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2023) (when "standing is challenged on the basis of the pleadings," we must "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party.").

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020). But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986)).

## DISCUSSION

Defendant moves to dismiss, arguing that the complaint fails to allege a concrete privacy harm and, thus, lacks standing. Mot. at 14. The Defendant also argues that Plaintiffs fail to state a claim for California Penal Code Sections 631(a) and 632(a). *Id*. at 16, 22. In response, Plaintiffs argue that they have standing under Article III because they have suffered an injury-in-fact and that the CIPA violations are sufficiently alleged. *See* ECF No. 10 ("Opp.").

### I. STANDING

A plaintiff "bears the burden of establishing standing." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). A plaintiff "must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted). An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. "[I]ntangible harms" can also be "concrete" such as "reputational harms, disclosure of private information, and intrusion upon seclusion" or those "specified by the Constitution itself." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Defendant argues that Plaintiff lacks Article III standing for her Cal. Penal Code § 631 claim. Mot. at 13. Specifically, Defendant maintains Plaintiff has failed to allege an injury-in-fact because Plaintiffs only alleged a collection of basic browsing data that does not accord to traditional privacy harms. *Id*. at 14-15. In contrast, Plaintiff does not claim

that the alleged collection is highly offensive conduct but instead maintains that there is an injury-in-fact because she affirmatively rejected cookies via the website's privacy banner. Opp. at 2.

These factual allegations present a close question. The browsing data allegedly intercepted includes search terms, products viewed, and items added to her cart. The tracking of this type of information is not "similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). The monitored information "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales" and is thus, not embarrassing, invasive, or otherwise private. *Id.*; *see Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026) ("Generally, Plaintiff may not have an expectation of solitude while browsing an online shopping platform, as Plaintiff would certainly not have such an expectation within the four walls of a real-world store.").

However, while the browsing data at issue "may not involve the types of information in which users have an unqualified expectation of privacy," Defendant affirmatively informed users they could decline or opt out of that form of information collection. *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1132 (N.D. Cal. 2025). This affirmative action distinguishes itself from *Popa* and creates "a reasonable expectation of privacy with respect to that information." *Id*. Defendants, then, allegedly collected that information anyway. *See Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("Plaintiffs here allege that MFP told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared. This harm is thus similar in kind to a harm recognized as actionable at common law."); *Shah v. Politico LLC*, No. 25-CV-05213-NW, 2026 WL 323269, at *4

(N.D. Cal. Feb. 6, 2026) ("Shah was immediately presented with an option to opt out of certain tracking cookies upon entering the Politico site, giving rise to an expectation of privacy."). Plaintiff also supports their allegations by detailing the tracking cookies installed, their tracking capabilities, and how they could create harm. *See Garcia*, 2026 WL 925028, at *6 (finding no standing in part because the complaint "contains few allegations about what tracking technologies were actually installed on Plaintiff's computer, and what those technologies were capable of").

Viewing the allegations in the light most favorable to the plaintiff, the Court finds that Plaintiff has established Article III standing at this time.

## II. FAILURE TO STATE A CLAIM

### a. CIPA § 631(a)

Section 631(a) of the California Penal Code makes punishable anyone who, "by means of any machine, instrument, or contrivance, or in any other manner," does any of four things:

> (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument ...";
>
> (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state";
>
> (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or

(4) “aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.”

Section 631 is a criminal statute, but Section 637.2 provides a civil cause of action to anyone “injured by a violation of this chapter ... against the person who committed the violation.”

Cal. Penal Code § 631(a) (numbering and formatting added for reference). “The California Supreme Court has explained that § 631(a) consists of three main clauses which cover ‘three distinct and mutually independent patterns of conduct’: (1) ‘intentional wiretapping,’ (2) ‘willfully attempting to learn the contents or meaning of a communication in transit over a wire,’ and (3) ‘attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.’ ” *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 945 (S.D. Cal. 2024) (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). A fourth clause creates an additional basis for liability for anyone “who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability.” *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (internal quotations and citation omitted).

Defendant argues that Plaintiff has failed to sufficiently allege the statute’s second, third, and fourth clauses.[2] Mot. at 17-22. Plaintiff contests these arguments. Opp. at 11-20.

/ / /

/ / /

---

[2] Defendant also argues that Plaintiff fails to allege the first clause, Mot. at 16-17, but the Complaint does not assert a Section 631(a) claim under the first clause, Opp. at 11 n.3.

### i. Second Clause: In Transit

Liability under the second clause arises when the purported CIPA violator "reads, or attempts to read, a communication that is 'in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within' California." *Mastel*, 549 F. Supp. 3d at 1135 (quoting Cal. Penal Code § 631(a)). Defendant contends that Plaintiff does not meet the "in transit" requirement. Mot. at 19.

To satisfy the "in transit" requirement, communications "must be acquired during transmission, not while ... in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (interpreting the "in transit" language of the Wiretap Act); *see NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2024) (applying *Konop* in the context of a CIPA claim). "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, Case No.: 23cv0102 DMS(KSC), 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (recognizing split among district court). "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

Here, the complaint alleges that when Plaintiff views and searches items on Defendant's website, the third-party companies concurrently capture those communications, thus "enabling [the third-party companies] to intercept sensitive data as it is generated." Compl. ¶¶ 26, 44, 59. Given this, the Court concludes that Plaintiff has alleged more than a conclusory allegation and has plausibly alleged her communications were intercepted while "in transit." *See Esparza*, 2024 WL 559241, at *3.

**ii. Third Clause**

Defendant argues that Plaintiff fails to allege a claim under the third clause because Plaintiff did not sufficiently allege a violation of the second clause. Mot. at 20. However, because the Court finds the second clause adequately alleged, Defendant's argument on this point fails.

**iii. Fourth Clause**

Section 631(a) imposes liability on anyone who "aids" another in violating the statutory section. *See* Cal. Penal Code § 631(a). Defendant maintains that this clause is not met because "Plaintiff does not allege that [Defendant] *knowingly* and *intentionally* aided any of the third-party companies in violating section 631(a)." Mot. at 21 (emphasis added). Plaintiff, however, responds that an intent standard is not included in the statute. Opp. at 17.

Courts have taken opposing approaches to this question. As aiding and abetting are not defined in the statute, some courts have adopted the common law civil tort definition of aiding and abetting in construing section 631 claims, which require scienter. *See Rodriguez v. Ford Motor Co.*, No. 23-cv-00598-RBM-JLB, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024); *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS(KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942-43 (N.D. Cal. 2024); *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRX), 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025). Other courts aim to more closely follow the language of the statute, which does not include mention of intent. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025).

This Court agrees with the latter approach.  Cal. Pen. Code § 631(a) does not set forth an "abetting" standard. Rather, Section 631(a) expressly provides for liability for any person "who ***aids, agrees with, employs, or conspires with*** any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Pen. Code § 631(a) (emphasis added); *Cousin*, 681 F. Supp. 3d at 1130 ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."). "[T]here is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Tate*, 762 F. Supp. 3d at 959; *see People v. Snook*, 16 Cal. 4th 1210, 1215 (1997) ("If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."). In sum, Plaintiff is not required to allege knowledge to meet the pleading requirement. Thus, Defendant's argument fails; the fourth prong is adequately alleged.

**b. CIPA § 632(a)**

To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent. *Turner v. Nuance Commc'ns, Inc.*, 735 F.Supp.3d 1169, 1177-78 (N.D. Cal. May 28, 2024). Defendant raises issue with the first two prongs. Mot. at 23-26.

**i. Confidential Communication**

CIPA defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made ... in any [ ] circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). More succinctly, a conversation is "confidential" under § 632 "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or

recorded." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n. 7 (2006); *see also Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023); *see also Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 1 Cal. Rptr. 3d 536, 545 (2003) ("It is for the jury to decide whether under the circumstances presented [Plaintiff] could have *reasonably* expected that the communications were private."); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024).

Here, Plaintiff rejected Defendant's use of optional tracking cookies and expected that her communications would not be intercepted. Compl. ¶¶ 3, 82. "[C]ourts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-CV-2012-DMS-MSB, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024); *see Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025); *In re Facebook*, 956 F.3d at 601-03 (finding users had reasonable expectation of privacy in activity outside of application where privacy policy stated defendant would not collect user data after user had logged out); *Brown v. Google LLC*, 685 F.Supp.3d 909, 937-39 (N.D. Cal. Aug. 7, 2023) (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced). Accordingly, this allegation is sufficient to satisfy the confidentiality requirement at this stage of the proceedings.

/ / /

/ / /

### ii. Electronic Recording

Section 632 prohibits using an "electronic amplifying or recording device" to record confidential communications. Cal. Penal Code § 632(a). Defendants argue this prong is not met because the Trackers are not "amplifying" or "recording" within the ordinary meaning of those words. Mot. at 25-26. However, pixel software has been found to be a device under Section 632(a). *Rack Room Shoes, Inc.*, 2025 WL 1085169 at *5; *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) ("Pixel software is a device under section 632(a)"). Thus, Defendant's argument fails.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 12, 2026

Hon. Gonzalo P. Curiel
United States District Judge